NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 105

No. 2014-352

| | |
|---|---|
| In re Champlain Parkway Act 250 Permit (Fortieth Burlington, LLC, Appellant) | Supreme Court |
| | On Appeal from Superior Court, Environmental Division |
| | March Term, 2015 |

Thomas G. Walsh, J.

Christina A. Jensen of Lisman Leckering, P.C., Burlington, for Appellant.

Brian S. Dunkiel, Geoffrey H. Hand, Elizabeth H. Catlin and Victoria M. Westgate of Dunkiel Saunders Elliott Raubvogel & Hand, PLLC, Burlington, for Appellee City of Burlington.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **SKOGLUND J.** The City of Burlington and the Vermont Agency of Transportation (AOT) applied for an Act 250 permit amendment to complete a project known as the Champlain Parkway, a roadway designed to route traffic more efficiently from Interstate 89 in South Burlington to the City of Burlington's downtown area. The environmental court concluded that the application complied with Act 250's transportation criterion (Criterion 5) subject to conditions requiring that applicants monitor and report on the project's traffic-congestion and safety impacts, and work with the opposing party in this proceeding, Fortieth Burlington, LLC, to resolve any remaining issues. Fortieth has appealed, asserting that: (1) the conditions imposed by the court were not supported by the evidence and findings, exceeded the

court's authority, and were insufficient to mitigate the project's adverse impacts; (2) the court misapplied the burdens of production and proof; and (3) the court erred in rejecting Fortieth's proposed conditions. We affirm.

¶ 2. The facts may be summarized as follows. The Champlain Parkway is a substantially modified version of the original Southern Connector project, a proposed four-lane highway running from Interstate 89 in South Burlington to downtown Burlington that received initial Act 250 approval in 1981. Although the first and southernmost phase of the project was constructed in the late 1980s, the discovery of hazardous material along the project route and subsequent remediation efforts halted further progress. The project subsequently evolved to its current form as the Champlain Parkway, with a roadway reduced to two lanes, a new route bypassing the contaminated area, and additional bicycle and pedestrian accommodations.

¶ 3. Applicants sought an Act 250 permit amendment for the redesigned project, which was divided into three segments for planning and construction purposes; the first, running from Interstate-189 to Home Avenue, had been previously approved and constructed; the second, running from Home Avenue north to Lakeside Avenue, was previously approved but never constructed; and the third, running from Lakeside Avenue east to Pine Street then north to terminate at Main Street, had not been previously reviewed or approved. In April 2012, the District No. 4 Environmental Commission issued an order finding that the project complied with all but two Act 250 criteria, Criteria 1(B) and 4 relating to wastewater and erosion control, which required approved stormwater permits.

¶ 4. Several parties appealed the ruling to the environmental court, although only one—Fortieth Burlington, LLC—remained by the time of the hearing. The questions on appeal related exclusively to the whether the project would "cause unreasonable congestion or unsafe conditions with respect to use of highways . . . and other means of transportation existing or proposed" under Criterion 5 of Act 250. 10 V.S.A. § 6086(a)(5).

2

¶ 5.    Fortieth owns property on the north side of Lakeside Avenue, just west of the intersection with the planned Parkway.  Its neighbor to the east on Lakeside is a property owned by the Burlington Department of Public Works (DPW).  Fortieth's property contains a large commercial building with a number of tenants, including the Veterans Administration, a pediatric practice group, the University of Vermont, and others.  The property also contains a parking lot with approximately 720 spaces located to the rear and west side of the building.  Access to the lot is via two driveways, one on the east side of the building, about 150 feet west of the Parkway intersection, and another on the west side of the building.  The eastern driveway is approximately twenty-four feet wide, twelve to enter and twelve to exit, and provides the primary access to the main parking area to the rear of the building.  A third potential access point is via a road at the north end of the lot running east to Pine Street through land owned by the Burlington Electric Department.  Access by way of this road has been blocked by the City, and it is not currently in use.

¶ 6.    As it approaches Lakeside Avenue from the south, the planned Parkway will have a traffic signal and a left-turn/through lane for traffic turning left onto Lakeside Avenue or going straight into the DPW access drive, as well as a right-turn lane for traffic travelling east on Lakeside Avenue to Pine Street, where another traffic signal and left-turn lane will allow traffic to continue northbound on the Parkway toward downtown Burlington.  The traffic signal at the intersection of the Parkway and Lakeside Avenue will include five separate dedicated phases for traffic from each of the following approaches: the Parkway; eastbound Lakeside Avenue; westbound Lakeside Avenue; DPW's driveway; and Fortieth's eastern driveway.

¶ 7.    The court held a two-day evidentiary hearing in February 2014, and issued a written decision on the merits, containing extensive findings and conclusions, in July 2014. Applicants relied substantially on a detailed report and testimony by an experienced transportation expert analyzing the predicted traffic and safety impacts of the Parkway.  His

3

report stated, and the court found, that overall the Parkway "is not a traffic generating project" but rather will "reassign[] traffic from the existing street network" and thereby "generally decrease" congestion in the area. Traffic on Lakeside Avenue from the Parkway intersection to Pine Street, however, was expected to increase. In particular, the traffic expert projected that the Level of Service (LOS)—a standard measure of delays per vehicle at intersections—at Fortieth's eastern driveway for both the morning and afternoon "peak hours" would increase as a result of the Parkway project from "LOS A" (little or no delay) to "LOS E" (very long delays) in the morning and "LOS F" (extreme delays) in the afternoon, based on a traffic-light cycle of 120 seconds in the morning and 150 seconds in the afternoon. AOT's policy is to maintain a rating of "LOS C" (average delays) for this type of project, subject to exceptions on a case-by-case basis. The result for vehicles exiting the eastern driveway could be lengthy backups and delays.

¶ 8.    The expert's report noted that its projections were based on future traffic forecasts, or "predictive traffic models," generated years earlier which assumed traffic growth of approximately 2.5% annually along Pine Street, whereas actual growth rates had been much lower, on average 0.25% annually. Thus, employing the "actual vehicle volume" on Lakeside Avenue generated a "built-in reserve capacity" for the system to handle more traffic with fewer delays than the model forecast.[1]

¶ 9.    In light of the foregoing, the trial court concluded that, "if the[] predicted delays are realized, the traffic attempting to exit Fortieth's property may experience unreasonable congestion" and, as a result, "may result in unsafe conditions" if frustrated drivers decided to enter the intersection when lights are yellow or red. (Emphasis added). Based on the conditional nature of the identified impacts, the trial court approved the project but determined to impose

---

[1] The report did not, apparently, analyze the effect of the choice available to drivers of using the western exit rather than the eastern exit to avoid the delay. A driver exiting the western exit turning left onto Lakeside Avenue and then right for the Parkway could, arguably, considerably shorten the wait period. This is another reason why the LOS estimate could be inaccurate.

conditions focused on "monitoring and reporting, as well as a right of action" if further evidence substantiated "that the Parkway is creating unreasonable traffic congestion and unsafe traffic conditions." Accordingly, the court ordered applicants to "perform traffic studies and signal warrant analysis" at specified intersections, including Lakeside Avenue and the Parkway, semi-annually for the first year of operation and annually for years two and three; to submit written reports of the monitoring results to the District Commission and Fortieth; and to "work in good faith" with Fortieth to "resolve any traffic congestion and safety issues." If these efforts failed to achieve resolution, the court provided that Fortieth could petition the Commission "to reopen its consideration of the application currently before the Court" within sixty days of receipt of the final traffic report. The court thereupon remanded the matter to the District Commission; applicants submitted the required stormwater discharge permits; and the Commission issued an Act 250 permit, in October 2014, incorporating the conditions imposed by the trial court.[2] This appeal followed.

¶ 10. Under our standard of review, the environmental court determines the credibility of witnesses and weighs the persuasive effect of evidence, and we will not overturn its factual findings unless, taking them in the light most favorable to the prevailing party, they are clearly erroneous. In re Vill. Assocs. Act 250 Land Use Permit, 2010 VT 42A, ¶ 7, 188 Vt. 113, 998 A.2d 712. Thus, the court's findings "will not be disturbed merely because they are contradicted by substantial evidence" but only where the party challenging them demonstrates that "there is no credible evidence to support them." In re Eastview at Middlebury, Inc., 2009 VT 98, ¶ 10, 187 Vt. 208, 992 A.2d 1014 (quotations omitted). We review issues of law or statutory interpretation de novo. In re Vill. Assocs., 2010 VT 42A, ¶ 7.

---

[2] The court issued a formal judgment order based on its findings and conclusions on July 30, 2014, and denied a motion to alter or amend the judgment the following month.

¶ 11. Fortieth maintains that the conditions of approval imposed by the trial court here were not supported by the evidence and findings, exceeded the court's authority, and were insufficient to mitigate the project's traffic and safety impacts. The argument is predicated substantially on Fortieth's assertion that the court found unequivocally "that the Parkway as proposed will cause unreasonable congestion" and "will result in deterioration of the LOS experienced by Fortieth's users from the current A . . . to the E and F unacceptable even under" AOT's traffic standards. Thus, Fortieth asserts that the conditions requiring mere monitoring and reporting were inadequate to mitigate the Parkway's adverse traffic and safety impacts. See 10 V.S.A. § 6087(b) (providing that, while a permit "may not be denied solely for the reasons set forth" under Criterion 5, "reasonable conditions and requirements . . . may be attached to alleviate the burdens created").

¶ 12. As noted, however, the trial court's findings under Criterion 5 were conditional; it did not find that the project "will" but rather "may" cause unreasonable traffic congestion or unsafe conditions if the forecasts in the expert's report were realized, a result rendered uncertain by the inflated numbers in the traffic-growth model on which it relied. Thus, the court's conditions—requiring future monitoring and reporting and authorizing a renewed challenge by Fortieth if necessary to mitigate unreasonable congestion—were appropriately tailored to the evidence and findings.[3]

---

[3] In view of our holding that the conditions imposed by the trial court here were supported by the evidence and findings, we need not address the City's claim that, even if the court had found actual "unreasonable congestion or unsafe conditions" it was not required to impose any mitigating measures as a condition of approval because the statute specifically provides that "[a] permit may not be denied solely for the reasons set forth" under Criterion 5, 10 V.S.A. § 6087(b), and makes the imposition of conditions discretionary. See id. (providing that "reasonable conditions and requirements . . . may be attached to alleviate the burdens created" by the project (emphasis added)). Furthermore, inasmuch as applicants have not challenged the conditions imposed, we need not consider the court's authority to impose conditions in the absence of an actual finding that the project will "cause unreasonable congestion or unsafe conditions" under § 6086(a)(5).

¶ 13.    Fortieth further asserts that the trial court "exceeded its authority" by imposing a condition on a non-party to the application. More specifically, Fortieth asserts that, by directing the parties "to work in good faith to resolve any traffic congestion and safety issues," the court necessarily required that Fortieth "alter the use of its property to alleviate the unreasonable congestion which will result from the Parkway." We discern no impediment, however, to a court generally directing the parties in a proceeding before it to proceed in good faith. See, e.g., V.R.C.P. 11(b) (attorneys and nonrepresented parties impliedly certify that pleadings are not for any improper purpose); V.R.C.P. 26(h) (counsel are obligated to "make good faith efforts" to resolve or reduce differences relating to discovery). Moreover, nothing in the trial court's order suggests that Fortieth may be required to make any particular use of its property in connection with the application; indeed, the court specifically rejected the City's suggestion that Fortieth be required to use its western driveway to alleviate traffic congestion on the ground that it lacked authority "to impose a condition on property which is not under [a]pplicants' control absent an agreement from the party that owns or controls that other property (here, Fortieth)." Accordingly, we find no error.

¶ 14.    Fortieth next asserts that the trial court misallocated the evidentiary burdens in conditionally approving the permit. Fortieth acknowledges that, by statute, the "burden shall be on any party opposing" an application on the basis of Criteria 5 or 8 "to show an unreasonable or adverse effect." 10 V.S.A. § 6088(b). Fortieth maintains, nevertheless, that applicants retained the initial burden of production for the court "to make an affirmative finding" under Criterion 5, and that they failed in this regard because their own evidence showed that the Parkway would cause unreasonable congestion and unsafe conditions. As noted, based on applicants' evidence regarding the existing and expected traffic conditions, the detailed traffic and safety report, and the testimony of the experienced traffic engineer who authored the report, the court here concluded that applicants had satisfied their burden of production under Criterion 5.

7

¶ 15. In response to this argument by Fortieth, applicants respond that their burden of production was merely to "to provide enough evidence for the court to rule on what the project's impacts are," thereby allowing the court to impose any mitigating conditions it deemed appropriate. Applicants understate the initial evidentiary burden under Criterion 5. See State v. Baker, 154 Vt. 411, 414, 579 A.2d 479, 488 (1990) (noting that "burden of production" is generally carried by establishing "prima facie case on each of the elements"). Nevertheless, we agree with the trial court that applicants met the burden of production here, as the detailed traffic-study report coupled with the evidence showing that its traffic projections were dramatically overstated in material respects with respect to the Parkway project and Lakeside Avenue location, were sufficient to establish prima facie compliance with Criterion 5.

¶ 16. Finally, Fortieth claims that the trial court improperly "shifted the burden to Fortieth to show that congestion would be reduced by alternative design of the Parkway/Lakeside Avenue/Eastern Access intersection," and in so doing erroneously rejected the alternatives proffered by Fortieth. Again the claim is unpersuasive, as we have clearly held that the opposing party's burden under § 6088(b) "includes the duty to demonstrate the availability of reasonable mitigating steps," including reasonable alternatives. In re Goddard Coll. Conditional Use, 2014 VT 124, ¶ 12, ___ Vt. ___, 111 A.3d 1285. Furthermore, while Fortieth offered a number of alternative-design proposals at trial, it focuses here on only one, claiming that the trial court erred in rejecting its proposal to change the proposed "five-way intersection" into a "four-way intersection" by aligning the Parkway/Lakeside intersection with Fortieth's eastern driveway.

¶ 17. Fortieth overstates the record evidence in this regard, which consisted largely of a general concession by applicants' traffic expert that "some of th[e] congestion issue with the Fortieth . . . driveway would be alleviated if the . . . driveway were aligned [with] the Champlain Parkway . . . to make a four-way intersection." Fortieth's claims to the contrary notwithstanding,

8

the expert did not acknowledge that the alternative design would be substantially safer or less confusing, and Fortieth introduced no evidence showing how this redesigned alternative would be engineered, its environmental effects, impact on other components of the Parkway project, and estimated quantitative reduction in traffic congestion and delays.  Accordingly, we discern no basis to disturb the trial court's finding that Fortieth failed to provide sufficient "details of [the alleged] improvement or the corresponding impacts on traffic," and no ground to disturb the judgment.

Affirmed.

FOR THE COURT:

_____

Associate Justice

9