STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION
                                                  Docket No. 147-10-13 Vtec~~147-10-13 Vtec~~

| Killington Village Master Plan A250 Application |
|---|

## ENTRY REGARDING MOTION

Title:          Motion to Amend/Alter Permit Conditions (Motion 15)

Filer:          Rutland County Regional Planning Commission, Two Rivers-Ottauquechee Regional Commission, and the Southern Windsor Regional Planning Commission (hereinafter collectively referred to as the "Regional Commissions").

Attorney:       Robert E. Woolmington

Filed Date:     July 1, 2016

Response filed on 07/14/2016 by Attorney Gregory J. Boulbol for Natural Resources Board

Response filed on 07/15/2016 by Atty. Christopher D. Roy for Appellant SP Land Company, LLC

Reply filed on 07/28/2016 by Attorney Robert E. Woolmington for the Regional Commissions (w/NRB joining).

**The motion is GRANTED.**

SP Land Company, LLC ("Applicant" or "SPLC") seeks land use permits for a twenty-five lot subdivision and Phase I of its master plan at the Killington Ski Resort ("Resort") in Killington, Vermont.  On June 21, 2016, this Court issued its Merits Decision and Judgment Order affirming the District #1 Environmental Commission's ("District Commissions") approval of the land use permit, subject to conditions.  Now before the Court is the Regional Commissions' motion to alter and amend certain conditions of our decision and order related to Criterion 5—traffic.  The Vermont Natural Resources Board ("NRB") supports the pending motion.  SPLC, while agreeing with parts of the Regional Commissions' motion, requests a different result.  For the reasons stated below, we **GRANT** the Regional Commissions' motion and revise the challenged conditions.

The focus of the motion to alter or amend is on Conditions 13 and 14 of the Court's Merits Decision and Judgment Order. The Regional Commissions claim that the Court erred by concluding that the Regional Commissions were willing to assume the responsibility of coordinating the corridor traffic study and by requiring the Regional Commissions to complete that traffic study.  The Regional Commissions clarify that, while advocating for a corridor study, they did not intend to make any commitment to undertake such a study and as they were not the permit applicant, the Court has no authority to impose permit obligations on them. As a

result, they argue that Conditions 13 and 14 must be altered.  SPLC has responded to the Regional Commissions' motion to alter or amend in three ways: (1) by objecting to the participation of the Southern Windsor Regional Planning Commission participation in the motion to alter; (2) by agreeing that the Court cannot compel third parties to undertake or finance certain actions; and (3) by arguing that any future traffic study obligations (Conditions 13 and 14) should be eliminated entirely because such conditions impermissibly extend jurisdiction over the project.

Although SPLC has not filed its own motion to alter or amend, we treat SPLC's memorandum in response to have properly raised several issues for our consideration.  We turn first to SPLC's claim that any future traffic study should be eliminated, and then address the Regional Commissions' obligations regarding the required traffic studies.  We will then briefly address any remaining matters raised by the motion or memorandum.

I.     Continuing Jurisdiction

SPLC challenges Condition 13, arguing that the condition improperly extends the District Commission's jurisdiction over Act 250 Criterion 5, allowing the Commission to reopen these permit proceedings should actual traffic impacts prove to be more significant than anticipated.

A district commission may consider and impose conditions when attempting to determine whether a proposed project satisfies the various criteria and sub-criteria of Act 250.  10 V.S.A. §§ 6086(c), 6087(b).  Appropriately imposed conditions may allow a proposed project to receive positive findings, subject to the conditions, and thereby facilitate finality in the permitting process while also ensuring compliance with Act 250.  Such a practice has been used frequently by district commissions and this Court. See Findings #151(1)–(4).  As the Vermont Supreme Court recently articulated, "Permissible conditions include those with prospective application that are intended to alleviate adverse impacts that either are or would otherwise be caused or created by a project, or those necessary to ensure that the development is completed as approved, such as those requiring permittees to take specific action when triggered by certain events . . . and requiring future compliance related filings . . . ."  In re Treetop Dev. Co. Act 250 Dev., 2016 VT 20, ¶ 12.

A permit condition is improper, however, when it "reserves continuing jurisdiction . . ., creating for the [District] Commission a mechanism to continuously amend the permit as necessary to redress future Act 250 violations or failures under the terms of the approved project by adding additional conditions."  In re Treetop Development Company Act 250 Dev., 2016 VT 20, ¶ 14.  Such a condition sidesteps the requirement that a project must satisfy the ten Act 250 criteria and creates an improper mechanism for internal enforcement by the Commission.  Id.  In other words, where a condition effectively bestows upon the Commission "the prospective extra-statutory authority to re-open the amended permit and perpetually act," the condition is an invalid condition subsequent.  Id.

Here, we conclude that, as written, Condition 13 improperly extends jurisdictional powers of the Commission by allowing the Commission to retain jurisdiction and impose additional mitigation measures.  Nevertheless, a condition substantially in a form similar to the original Condition 13, with the offending language removed, is a necessary and lawful component of the Merits Decision and Judgment Order.

Our traffic findings (21-71, 131-136, and 143-145) establish the foundation for a multi-layered concern that the Court has about the possible traffic impacts of this project: first, that the adverse traffic impacts could be greater if the proposed project generates more traffic than anticipated, and second, that these unanticipated adverse traffic impacts could extend beyond the project's host community and across the multiple communities along our regional highways, including Interstates 89 and 91, as well as Vermont State Highways 4 and 7. These concerns lead the Court to conclude that it must obligate SPLC to conduct traffic studies that establish the existing level of traffic and the future levels of traffic one and five years after Phase 1 is completed. We continue to believe that such studies are necessary to confirm the actual traffic impacts from the Phase 1 developments and to provide the District Commission with clear evidence of any distinction between the projected and actual traffic impacts when the Commission is called upon to consider future expansions at the Resort.

Such a condition does not improperly extend the Commission's jurisdiction. The opportunity to review the results of SPLC's post-permit Phase I traffic studies will only arise as SPLC submits permit applications for future phases of the proposed development. Given the multi-phased nature of SPLC's master plan and the Court's lingering concerns about the possibility of unanticipated adverse traffic impacts, imposing the traffic study condition is also proper considering the authority in master plan proceedings for the district commissions or this Court "to provide guidance and greater predictability to the applicant and all parties in the review of complex development projects." Master Plan Policy at 1, available at http://www.nrb.state.vt.us/publications/policies/masterpmtpolicy.pdf. See also discussion of master plan review and guidance in our Merits Decision: In re Killington Village Master Plan Act 250 Application Appeal, No. 147-10-13 Vtec, slip op. at 56–59 (Vt. Super. Ct. Envtl. Div. June 21, 2016) (Durkin, J.).

We therefore revise Condition 13 in the following manner and will incorporate the revised Condition 13 into the Amended Judgment Order that accompanies this Entry Order. The applicable provisions of our Merits Decision are hereby amended by reference to the attached Amended Judgment Order.

13.    **Traffic Study to be Completed by SPLC.**

The permittee shall collect and document traffic counts along Killington Road and its various intersections, including its intersection with US Route 4, prior to occupancy of any of the Phase I developments.

The permittee shall also collect and document traffic counts for the same intersections within one year after completion of Phase I in order to evaluate the actual trip generation rates and traffic impacts of the Phase I projects, and to analyze whether those impacts have caused unreasonable highway congestion or unsafe traffic conditions or endangered the public investment in the highway networks beyond what was estimated by its experts in this permit application proceeding. The permittee shall also conduct a similar traffic study five (5) years after substantial completion of Phase I.

Each traffic study shall be consistent with the Traffic Impact Study Guidelines (VTrans, 2008 or as most recently amended). The permittee shall submit these traffic studies to the District Commission within thirty (30) days of completion and shall make such traffic studies available to any party in any application proceeding concerning a future phase of its Master Plan who specifically requests copies of such traffic studies.

II.     Alterations to Condition 14

The Regional Commissions argue that we improperly imposed an affirmative obligation on them to conduct post-development traffic studies because the Regional Commissions made no binding commitment at trial and, as non-applicants, we have no authority to impose such a condition on them. We agree that we erred in fashioning Condition 14 to obligate the Regional Commissions to undertake certain traffic studies.

We acknowledge that we only have jurisdiction in this proceeding to direct the project applicant, SPLC, to take affirmative corrective action. As the Regional Commissions are not permit applicants, we have no authority to impose obligations on them. Nevertheless, because SPLC's proposed developments are not the only cause of possible traffic increases along the roads and corridors that lead to the Resort and provide access to nearby towns and highways,[1] we are unwilling to impose upon SPLC the entire burden of conducting a corridor traffic study. Rather, acknowledging that we cannot compel other parties to contribute or participate, we direct SPLC to work with the Regional Commissions, and any other entity who materially contributes to the flow of traffic along these corridors, to attempt to complete a corridor traffic study.

At trial, it was suggested that a corridor traffic study could cost about $100,000.00. Based upon this estimated total cost, and based upon the enormity of SPLC's proposed project, we directed SPLC to contribute $20,000.00 (the equivalent of twenty percent of the total cost) to the cost of such a corridor traffic study. We clarify here that we only direct that SPLC contribute $20,000.00 if and when an agreement is reached with one or more of the Regional Commissions to actually complete the corridor study. Additionally, SPLC shall only contribute $20,000.00 if the total cost of such study remains at approximately $100,000.00. To the extent that the costs significantly differ from that prediction, we direct SPLC to use good faith best efforts to come to an agreement on the appropriate apportionment of costs.

In our revisions to Condition 14, we have relied upon a similar condition crafted by this Court in In re Champlain Parkway Act 250 Permit, No. 68-5-12 Vtec, slip op. at 16 (Vt. Super. Ct. Envtl. Div. July 30, 2014) (Walsh, J.), aff'd, 2015 VT 105. There, in addition to a directive that the applicant conduct various traffic studies due to a concern (similar to a concern expressed in our Merits Decision here) that the project *may* experience unreasonable congestion and *may* result in unsafe conditions, this Court also directed that the applicant "work in good faith with [the others] to resolve any traffic congestion and safety issues." Id. In a similar vein, we direct SPLC to work with the Regional Commissions, the Vermont Agency of Transportation ("VTrans"), and

---

[1] These traffic corridors extend beyond Killington Road and include US Route 4 west to Rutland and east to Interstate 89; Vermont Route 100, south to Vermont Route 103; and Vermont Route 103 east to Interstate 91.

any other contributing entity to both conduct these broader corridor traffic studies and to work in good faith with those entities to offer resolutions for possible future traffic congestion and safety issues.

We therefore revise Condition 14 and will incorporate the revised Condition 14, provided below, into the Amended Judgment Order that accompanies this Entry Order. The applicable provisions of our Merits Decision are amended by reference in the attached Amended Judgment Order.

**14.     Corridor Study to be Completed by Permittee with Assistance from Other Participating Entities.**

As part of the next application submitted by SPLC or any successor that concerns a phase of the Killington Master Plan, the Court encourages the Permittee to use good faith best efforts to coordinate with one or more of the Regional Commissions, VTrans, and any other entity that contributes traffic to the various highway corridors impacted by the developments at the Killington Resort, the Okemo Mountain Ski Resort, and any other major developments along these corridors, which includes Killington Road, U.S. Route 4 west to Rutland and east to I-89, Vermont Route 100 south to Vermont Route 103, and Route 103 east to I-91.

This corridor study shall evaluate the traffic impacts in four distinct scenarios:

(1)  Baseline conditions (i.e., pre-construction of Phase I);
(2)  Estimated built conditions of the Phase II or next planned Phase;
(3)  Cumulative impacts; and,
(4)  Killington Village Master Plan in any later phases and at full build out.

This corridor traffic study shall be consistent with the *Traffic Impact Study Guidelines* (VTrans, 2008 or as most recently amended). The scope of this corridor traffic impact study shall be coordinated with and approved in advance by the Vermont Agency of Transportation.

If SPLC is successful in its efforts to coordinate this corridor traffic study, including the terms of how the corridor study could be overseen by one or more of the Regional Commissions, the permittee shall contribute a sum equal to twenty percent (20%) of the total cost for such corridor traffic study, unless an alternate amount is agreed to by the participating parties.

If an agreed-upon corridor traffic study is completed, the permittee shall submit the corridor traffic study to the District Commission within thirty (30) days of completion and shall make such traffic study available to any party in any application proceeding concerning a future phase of its Master Plan who specifically requests a copy.

III.      Other Necessary Revisions

Although SPLC chose not to file its own motion to alter or amend, it did raise several issues in response to the Regional Commissions' motion. To the extent necessary, we address SPLC's remaining concerns here.

First, SPLC objects to the Southern Windsor County Regional Planning Commission ("SWCRPC") participating in the Regional Commissions' motion because SWCRPC is not a party in this matter. SPLC correctly notes that the Court denied SWCRPC party status, but did allow SWCRPC authority to participate as a "friend of the court," pursuant to 10 V.S.A. §6085(c)(5). See In re Killington Village Master Plan Act 250 App. Appeal, No. 147-10-13 Vtec, slip op. at 22 (Vt. Super. Ct. Envtl. Div. Aug. 6, 2014) (Durkin, J.) ("Pre-Trial Motions Decision"). Friend of the court status generally allows the entity to participate in a legal proceeding, but does not allow that entity to have the right of appeal enjoyed by parties; the extent to which the entity participates is within the Court's discretion and can include offering trial testimony and the filing of legal memoranda. 10 V.S.A. §6085(c)(5). While our Pre-Trial Motions Decision did not explicitly announce that SWCRPC would be allowed to participate in the joint filing of pre-or post-trial motions, it joined the other Regional Commissions in filing pre-trial memoranda and offering testimony at trial without objection from SPLC or any other party. We therefore see no basis for excluding SWCRPC from these post-trial matters.

SPLC notes that the Rutland County Regional Planning Commission ("RCRPC") did not sign the Regional Commissions' and NRB's most recent reply memorandum filed in support of the Regional Commissions' motion to alter. Applicant does not offer how the Court should respond to RCRPC's apparent lack of participation in the filing of the latest reply memoranda. Since RCRPC has not withdrawn its participation in the underlying motion to alter, we decline to take any action.

Next, SPLC highlights that language in the Court's original Conditions 13 and 14 imposing obligations on the Permittee and its successors is unnecessary since applicable case law consistently has directed that Act 250 permit terms and conditions run with the land. We agree with Applicant and have removed the surplus language from the revised Conditions 13 and 14.

SPLC also identifies several typographical errors in the Merits Decision and Judgment Order where the Court referenced Applicant in the plural, when in fact there is only one permittee. We have corrected these typographical errors in the Amended Judgment Order and correct similar typographical errors in the Merits Decision by reference. We have also corrected the improper reference to an "Altered Permit" in the original Judgment Order and corrected the referenced date of the Act 250 Permit issued below (October 7, 2013).

Further, we are aware that the original Judgment Order does not contain a specific reference to our determination that the installation of pressurized sprinkler systems in the dwellings constructed within the Ramshead Brook Subdivision is not required. We have added language to make clear that this sprinkler installation requirement imposed by the District Commission must be stricken.

Lastly, we decline to strike our directive that SPLC continue to employ a law enforcement officer at the intersection of Killington Road and U.S. Route 4 between 4:00 PM and 5:00 PM on

Saturdays in December and January to assist in the flow of traffic.  While we recognize that the parties understand that this obligation originated in an Act 250 permit from 1985 and believe that this permit obligation is now only imposed upon the current operator of the ski resort facilities—Killington/Pico Ski Resort Partners, LLC ("KPSRP")—we note that the permit condition was crafted at a time when the lands and improvements now separately owned by KPSRP and SPLC were owned and controlled by a single entity.  Further, given that we have concluded that SPLC's Phase I improvements will generate additional off mountain traffic, we conclude that SPLC must contribute to the positioning of a law enforcement officer at the intersection of Killington Road and U.S. Route 4 during times of higher traffic flow.

For all these reasons, we hereby **GRANT** the Regional Commissions' post-trial motion to alter or amend and have crafted the Amended Judgment Order that accompanies this Entry Order to reflect these changes.  The applicable provisions of our Merits Decision are hereby amended by reference to the attached Amended Judgment Order.

**So ordered.**

Electronically signed on August 29, 2016 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division

Notifications:
Christopher D. Roy (ERN 1352), Attorney for Appellant SP Land Company, LLC

Gregory J. Boulbol (ERN 1712), Attorney for Interested Person Natural Resources Board

Elizabeth Lord (ERN 4256), Attorney for Interested Person Agency of Natural Resources

Nathan H. Stearns (ERN 3585) and C. Daniel Hershenson (ERN 3586), Attorneys for
    Cross Appellants Stephen Durkee, Mountainside Properties, Inc., Mountainside
    Development, Inc., Fireside Properties, LLC, and Killington Village Prop. Inc.

Robert E. Woolmington (ERN 3047), Attorney for Rutland County Regional Planning Comm.,
    Two Rivers Ottauquechee Regional Comm., and So. Windsor County Regional Planning
    Comm.

Melvin B. Neisner (ERN 3792), Attorney for Interested Persons Sherburne Volunteer Fire Dept.,
    Edgmont HOA and Mike Moriaty, o/b/o Mountain Green Condo Assoc.

Jon S. Readnour (ERN 2166), Attorney for Interested Person Pinnacle Condo. Association, Inc

Carl H. Lisman (ERN 3882), Attorney for Interested Person Highridge Condominium Owners'
    Assoc.