VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.    23-AP-239



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

DECEMBER TERM,   2023

In re Sugar Mountain Holdings, LLC Act
250 Permit Amendment (Paul Adkins\*)

}
]
}
}
}

APPEALED FROM:

Superior Court, Environmental Division
CASE NO. 22-ENV-00117
Trial Judge: Thomas G. Walsh

In the above-entitled cause, the Clerk will enter:

Neighbor appeals pro se from the trial court's decision that applicant's proposal satisfies Criterion 8 of Act 250 with respect to noise levels.  We affirm.

The District #2 Environmental Commission approved in part and denied in part applicant's application for an Act 250 permit application to convert an existing ski base lodge in Dummerston, Vermont, into a brewery, distillery, and tasting room, with the ability to host outdoor functions of up to 150 guests with amplified music.  Following a four-day trial before the Environmental Division, all parties except neighbor agreed to a revised permit amendment and they submitted a stipulated order to the court.  Neighbor disputed only the project's compliance with Criterion 8 of Act 250, 10 V.S.A. § 6086(a)(8), and specifically, noise.  In a written order, the court concluded that the proposed project satisfied Criterion 8.

The court made numerous findings, including the following.  Applicant owns an approximately 375-acre property in Dummerston, which includes a defunct ski area.  The ski resort predated the adoption of Act 250 and did not initially require an Act 250 permit.  In July 1987, the ski area obtained an Act 250 permit to make changes to the lodge.  In February 2020, applicant applied for an Act 250 permit amendment.

Among other activities, applicant sought to host catered events such as weddings with up to 150 guests and outdoor amplified music.  Applicant proposed to use the area year-round.  The outdoor amplified music would be on the western side of the existing ski lodge, on the north side of a patio.  Speakers would be directed southerly.  Performances would include smaller solo to trio-style musicians or larger bands.  A whiskey barrel on the property would be placed in a way such that the longer side of the building will run east to west to assist in sound mitigation.  When

bands larger than a trio played, applicant would either construct a temporary shell behind the musicians or install temporary panels on the northwestern, northern, and northeastern sides of a gazebo-like structure in which the band would play. Either option would, at minimum, block the line of sight from the closest residences to the north of the property. The southern edge of the patio was approximately 92 feet from the source of the music, and applicant would limit the sound level there to 83 decibels (dBA). Outdoor music would conclude by 10:00 p.m. on weeknights and 11:00 p.m. on weekends.

Applicant presented expert testimony and evidence regarding noise levels from Eddie Duncan, a noise-control engineer with RSG. Mr. Duncan conducted a noise assessment in the form of a sound model. He also relied on background sound-level monitoring, which recorded background noise on the property over two days. The monitoring showed the representative background noise levels at the property and the closest residence. The court found that background noise levels at the property were largely related to traffic noise from Vermont Route 30, which ran north to south along the property. During daytime hours, the average background sound levels were approximately 64 dBA. Between 8:00 p.m. and 11:00 p.m., average sound levels ranged from 53 to 63 dBA, although the average was inflated when cars passed along Route 30. These measurements represented "the average sound pressure over a period of time and [were] generally representative of the overall sound to which a person is exposed."

The noise assessment modeled two scenarios relative to outdoor music at the property. The first scenario modeled a solo to trio set of musicians and the second modeled a larger band playing outside. The second scenario included use of the temporary band shell/barrier. The highest modeled noise level under both scenarios at a residence was 55 dBA. The project would not, under either scenario, exceed 70 dBA at the property line. Applicant provided sound modeling for neighbor's property. Sound levels at his property would be at or below 45 dBA under either scenario.

Based on these and other findings, the court considered if the project, as proposed, satisfied Criterion 8. Criterion 8 requires that a project "will not have an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites, or rare and irreplaceable natural areas." 10 V.S.A. § 6086(a)(8). "Aesthetics" encompasses noise impacts. In re Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 9, 199 Vt. 19. If an applicant meets its initial burden of production, then the ultimate burden of proving that a project does not conform with Criterion 8 rests upon the project's opponents. 10 V.S.A. § 6088(b). The critical question, as asked by the trial court here, is whether the proposed project would "be in harmony with its surroundings," that is, whether it will " 'fit' the context in which it will be located." See, e.g., In re Quechee Lakes Corp., 154 Vt. 543 (1990). Under the "Quechee test," the court first examined if the project might cause an adverse impact on the character of the area, and, if so, whether the impact would be undue.

In conducting its analysis, the court used the Barre Granite standard to measure whether noise might cause an adverse impact. This standard, which was to be flexibly applied, set a benchmark of 70 dBA at the property line of a project and 55 dBA at residences and areas of frequent human use. Notwithstanding this benchmark, the court explained that the question of whether noise was adverse ultimately depended on whether the noise suited the existing soundscape, considering the nature and volume of existing noise and the qualitative character of the noise that will be added. Lathrop, 2015 VT 49, ¶ 81.

The court concluded, based on applicant's noise study, that the project would comply with the <u>Barre Granite</u> standard at surrounding residences, including neighbor's residence, and in areas of frequent human use through the mitigation measures adopted by applicant. The court detailed the mitigation measures that applicant had adopted. It found that, while neighbor appeared to dispute the use of prospective modeling by RSG and applicant, the court and the District Environmental Commissions routinely relied on noise modeling to determine compliance with noise standards. Neighbor did not point to anything within the modeling that would make it not credible, nor did he provide a competing, credible noise assessment. The court thus relied upon the noise assessment in reaching its conclusion. The court also rejected neighbor's attempt to raise concerns on behalf of the closest neighbor to the project, explaining that neighbor lacked standing to do so.

As indicated above, the noise levels in the area of neighbor's home were modeled to be approximately 45 dBA at the maximum under the loudest scenario, which was akin to the noise from a refrigerator three feet away. While neighbor might be able to hear music from the project when outdoor amplified music occurred, the court explained that that was not fatal to the project nor did it result in, absent other areas of noncompliance, the project's noise being adverse under the <u>Barre Granite</u> standard. Importantly, the court continued, Criterion 8 was not a guarantee that aesthetics would never change; instead, it ensured that such change would be reasonable. The court added that this noise level was less than the existing noise from Route 30 either with or without the noise levels from passing cars. It determined that the modest increase from the project, which was well below the 55 dBA generally applied by the <u>Barre Granite</u> standard, complied with Criterion 8. The court rejected neighbor's argument that simply hearing the project, at any level, would constitute adversity under Criterion 8. It added that if applicant failed to comply with the mitigation imposed, and the conditions imposed, that would constitute grounds for an enforcement action.

While the court found it unnecessary to consider whether any adverse impact would be undue given its conclusion above, it nonetheless engaged in this analysis and concluded that to the extent that the noise could be considered adverse, it was not undue. This appeal followed.

On appeal, neighbor essentially challenges the trial court's evaluation of the weight of the evidence. He maintains that outdoor amplified music is "shocking and offensive" in his home, and he identifies what he considers flaws in the noise assessment. Neighbor questions whether the noise assessment accounts for a "worst-case" scenario or the fact that different bands might perform at different decibel levels. He argues that the modeling is meaningless, the decibel levels are unenforceable, and applicant might not comply with the mitigation measures. Neighbor contends that he will be adversely affected by the noise and that loud music is distinct from the existing road noise. Neighbor offers his opinion as to how the <u>Quechee</u> test should be conducted here.

We conclude there was no error. Neighbor does not appear to challenge any of the court's findings as clearly erroneous. He simply argues that we should weigh the evidence differently and give greater credit to his point of view. That is not the role of this Court on appeal. "Under our standard of review, the [trial court] determines the credibility of witnesses and weighs the persuasive effect of evidence." <u>In re Champlain Parkway Act 250 Permit</u>, 2015 VT 105, ¶ 10, 200 Vt. 158. The court's findings are supported by the evidence and they support the court's conclusion as to the absence of any adverse impact. Given this, we need not address

3

whether any adverse impact would be undue.  As reflected above, the court was unpersuaded by neighbor's attempts to challenge the credibility of the noise assessment.  It did not err in observing that the decibel level of the music would be less than that generated by traffic on Route 30, even if neighbor has a different opinion about noise "cut through."  It explained that noncompliance with the permit's conditions could be grounds for an enforcement action.  While neighbor disagrees with the court's decision, he has not demonstrated any error.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

William D. Cohen, Associate Justice

Nancy J. Waples, Associate Justice