STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| | Docket No. 62-6-18 Vtec |

| VTRE Investment LLC CU Duplex | DECISION ON THE MERITS |

In this on-the-record proceeding, Michael Seaberg ("Mr. Seaberg") appeals a May 22, 2018 decision of the Town of Stowe Development Review Board ("DRB") approving with conditions a conditional use application submitted by VTRE Investments, LLC ("VTRE"). Castine Mountain Road, LLC ("Castine"), is the successor-in-interest to VTRE and now serves as Applicant in these proceedings.

Appellant Mr. Seaberg represents himself in this matter. Castine is represented by Alexander LaRosa, Esq. The Town of Stowe ("Town") is represented by Joseph S. McLean, Esq.[1]

**Standard of Review**

A municipality that elects to make its land use determinations subject to on-the-record review is must follow the procedural requirements established in the Municipal Administrative Procedures Act (MAPA). *See* 24 V.S.A. § 4471(b); In re Brandon Plaza Conditional Use Permit, No. 128-8-10 Vtec, slip op. at 6–7 (Vt. Super. Ct. Envtl. Div. Mar. 26, 2012) (Walsh, J.). Pursuant to MAPA, the DRB's decision must be "in writing and shall separately state findings of fact and conclusions of law." 24 V.S.A. § 1209(a). In an on-the-record appeal, the Court considers only the decision below, the record made before the municipal panel, and the briefs submitted by the parties. In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). We do not take new evidence or make our own factual determinations. Instead, we review the municipal panel's factual findings to determine whether the decision below "explicitly and concisely restate[s] the underlying facts that support the decision." *See* 24 V.S.A. § 1209(a)—(b).

---

[1] The Town has not submitted a brief in this appeal.

The Court will affirm factual findings only if they are supported by substantial evidence in the record below. *See* In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 76, 186 Vt. 568. In examining whether the is substantial evidence in the record, the Court does not assess the credibility of witnesses' testimony or reweigh conflicting evidence in the record. *See* Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248; In re Appeal of Leikert, No. 2004-213, slip op. at 2, 2004 WL 5582097 (Vt. Nov. 1, 2004) (unpublished mem.). The Court simply looks to whether the record includes relevant evidence that "a reasonable person could accept . . . as adequate" support for the factual findings. Devers-Scott, 2007 VT 4, ¶ 6 (quoting Braun v. Bd. Of Dental Exam'rs, 167 Vt. 110, 114 (1997)).

The Court then reviews the DRB's legal conclusions without deference, unless such conclusions are within the DRB's area of expertise. In re Stowe Highlands Resort PUD, 2009 VT 76, ¶ 7, 186 Vt. 568.

Our review is additionally limited to those issues raised by the Appellant's Statement of Questions. *See* V.R.E.C.P. 5(f). With these legal standards in mind, we conduct our review of the DRB's Decision within the context of the legal issues preserved for our review by Mr. Seaberg in his Statement of Questions.

## Background

Castine is the successor in interest to Applicant VTRE. Castine owns a parcel previously owned by VTRE, approximately 4.2 acres in size, located at 4527 Mountain Road in Stowe, Vermont ("the Property"). The Property is located within the Upper Mountain Road ("UMR") Zoning District. On March 2, 2018, VTRE submitted an application to the DRB seeking approval to construct a duplex on the Property ("the Project"). Residential multi-family dwelling units are permitted as conditional uses in the UMR District. In connection with its application, VTRE submitted site plans, an erosion control plan, and a landscape plan, each prepared by Grenier Engineering. VTRE also submitted: floor plans and elevations prepared by G4 Design Studio; floor plans, elevations, and renderings drafted by Justin Bourne; and an erosion and sediment transport study prepared by Bannon Engineering. The record also contains information on proposed outdoor lighting; photographs of signage and an existing crawlspace; and email correspondence.

2

The DRB conducted a public hearing on April 3, 2018, which was then continued to May 15, 2018. The hearing re-opened on May 15, 2018 and closed at the end of that proceeding. The DRB reviewed the Project for compliance with the Town of Stowe Zoning Regulations effective July 3, 2017 ("Regulations").

On May 22, 2018, the DRB issued its decision approving the application subject to the following conditions:

1. This project shall be completed according to the plans hereby approved. Any change to the plans or the proposed use of the property shall be brought to the Zoning Administrator's attention, prior to its enactment, for a determination if an amendment is required.

2. Prior to the issuance of the zoning permit the Applicant shall file the following additional information:

    a. Revised architectural elevations which match the building renderings;

        o The revised architectural elevation drawings shall depict the location of the front deck, exterior lighting, as well as note the building elevation and height, as defined by the Town of Stowe Zoning Regulations.

        o The revised rear architectural elevation drawing shall accurately depict the rear elevation in relation to the proposed ground elevations.

    b. An updated Erosion Control Plan showing the revised improvements and notations as shown on the Erosion Control Plan prepared by Grenier Engineering, last revised 3/21/18.

    c. An executed consecutive water system agreement between the Town and the property owner.

    d. Water and sewer allocation granted by the Town.

    e. Submit water and sewer systems plans, details, and specifications for review and approval by the Department of Public Works.

3. No construction noise is allowed at the property boundaries outside the work hours of Monday through Friday 8:00AM-5:00PM.

4. All trash and recycling receptacles shall be stored inside of the garage(s) or in a screened structure approved by the Zoning Administrator.

5. The color scheme of the duplex shall be generally as portrayed in the provided building renderings and discussed during the hearing.

6. The landscaping shall be maintained in healthy condition. Any dying or diseased landscaping be replaced in kind.

7.  Prior to the issuance of a Certificate of Occupancy, the Applicant shall file a revised site plan and landscaping plan showing the location of a minimum 20' vegetative buffer or otherwise demonstrate to the Board how the proposal satisfies the requirements of Section 3.7(2)(C)(2)(a).

In re VTRE Invs. LLC, Findings of Fact & Conclusions of Law, at 6 (Town of Stowe Dev. Review Bd. May 22, 2018) [hereinafter, "DRB Decision"].

Mr. Seaberg is an occupant of abutting property at 4441 Mountain Road, Stowe, Vermont. He submitted written comments to the DRB and participated in the public hearing on April 3, 2018. Mr. Seaberg filed a timely appeal of the DRB's Decision to this Court on June 20, 2018. On January 4, 2019, the Court granted VTRE's motion to dismiss the appeal for lack of standing. *See* In re VTRE Inv. LLC CU Duplex, No. 62-6-18 Vtec (Vt. Super. Ct. Envtl. Div. Jan. 4, 2019) (Durkin, J.). Mr. Seaberg subsequently appealed to the Vermont Supreme Court. The Supreme Court reversed, finding that Mr. Seaberg has standing to pursue his appeal, and remanded to this Court for further proceedings. *See* In re VTRE Invs., LLC Conditional Use Duplex, No. 2019-050, 2019 WL 3543711 (Vt. Jul. 12, 2019) (unpublished mem.). On remand, we now consider Mr. Seaberg's on-the-record appeal of the DRB's May 22, 2018 Decision.

**Discussion**

Mr. Seaberg raises nine Questions in his Statement of Questions. The Questions ask whether the DRB erred in determining that: (1) no front yard landscaping was required, (2) the Applicant's proposed side yard landscaping was adequate, (3) storing garbage in the garage meets the screening requirements for garbage collection areas, (4) no additional stormwater would be directed toward neighboring properties due to the Project, (5) no additional stormwater management was required, (6) no stormwater plan was required, (7) the mass and scale of the Project was compatible with the existing site, (8) the mass and scale of the Project was compatible with neighboring properties, and (9) the structure will not adversely affect the character of the area. *See* Statement of Questions, filed Jul. 9, 2018. We address each issue in turn.

4

### I.    Question 1: Front yard landscaping

Question 1 asks whether the DRB erred in determining that no front yard landscaping was required.  Specifically, Mr. Seaberg contends that the DRB should have required a 20-foot-wide landscaped strip running along the right-of-way for Mountain Road.  Mountain Road is also known as Vermont Route 108.  Pursuant to the conditional use standards, "[a] continuous strip not less than twenty (20') feet deep, measured from the edge of the highway right-of-way, shall be maintained between the street line and the balance of the lot, which strip shall be suitably landscaped."  Regulations § 3.7(2)(C)(2)(a).  The DRB has discretion to waive this requirement "when mitigation [through] design, screening or other mitigation will accomplish the objectives outlined for the designated districts."  Regulations § 3.7(2)(C).

The DRB acknowledged the buffer requirement and noted evidence of "existing drainage issues from the Mountain Road and Lower Sanborne Road." *See* DRB Decision at 5; *see also* Transcript, May 15, 2018, at 20–25.  As the DRB explained, VTRE requested temporary relief from the buffer requirement and "testified that . . . the [buffer] area cannot support thriving landscaping until the drainage issues are resolved."  DRB Decision at 5.  The Decision provides "temporary relief . . . until such time as the drainage issues can be properly addressed."  Id.  Through Condition 7, the DRB required VTRE to "file a revised site plan and landscaping plan showing the location of a minimum 20' vegetative buffer or otherwise demonstrate . . . how the proposal satisfies the requirements of Section 3.7(2)(C)(2)(a)" prior the issuance of a Certificate of Occupancy. *See* id. at 6.

Castine argues that the DRB was within its discretion to provide temporary relief based on the evidence.  However, Mr. Seaberg argues that "[s]hifting the requirement for the 20' front yard landscaped strip to be shown as a condition of a certificate of occupancy rather than a permit eliminates the chance for the public to review . . . [the] landscaping plan . . . prior to the issuance of the permit."  Appellant's Reply Brief at 5, filed Dec. 24, 2019.  The core of Mr. Seaberg's concern appears to be that the DRB postponed its review of the front yard landscaping such that the review would occur after the permit was granted.  We share Mr. Seaberg's concern.

Before granting approval for a conditional use, "the DRB must determine that the use will conform to" the specific and general standards set forth in the Regulations. *See*

Regulations § 3.7(2); *see also* 24 V.S.A. §§ 4414(3)(A)–(B) (stating that "certain uses may be allowed only by approval of the [DRB] . . . if the [DRB] . . . determines that the proposed use will conform to" the relevant standards). "In rendering a decision in favor of the applicant, the panel may attach additional reasonable conditions and safeguards as it deems necessary to implement . . . the pertinent bylaws and the municipal plan then in effect." 24 V.S.A. § 4464(b)(2). Acceptable conditions can include post-development actions or requirements to ensure that certain standards are met. *See* In re Hinesburg Hannaford Act 250 Permit, 2017 VT 106, ¶¶ 83–84, 206 Vt. 118 (in the context of Act 250).

In this case however, the DRB did not make any determination on the Project's compliance with the buffer requirement, nor did it conclude that "other mitigation will accomplish the objectives outlined for the . . . district[]." *See* Regulations §§ 3.7(2)(C), (2)(C)(2)(a). Instead, the DRB approved the application on the condition that the applicant "demonstrate . . . how the proposal satisfies the requirements of Section 3.7(2)(C)(2)(a)" at a later date. *See* DRB Decision at 6. A permit condition that qualifies permit approval on future proof of compliance after the permit takes effect, or allows the permitting authority to alter an approved permit pending some future event, is regarded as an impermissible condition subsequent. *See, e.g.*, In re Treetop Dev. Co. Act 250 Dev., 2016 VT 20, ¶ 14, 201 Vt. 532 (discussing conditions subsequent in the context of Act 250 approvals); In re Pelkey Subdivision Amendment, No. 119-9-16 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. June 28, 2019) (Durkin, J.) (a permit approval including a requirement that the town automatically approve an unknown future proposal would be "an invalid condition subsequent"). Conditions of this type allow the reviewer "to circumvent the requirement that projects which have been permitted satisfy the . . . criteria." *See* Treetop, 2016 VT 20, ¶ 14 (invalidating a condition subsequent imposed by a District Environmental Commission).

The DRB must make affirmative findings of fact; it cannot substitute a condition for its obligation to determine whether "the use will conform" to the applicable standards. *See* Regulations § 3.7(2); *see also* Treetop, 2016 VT 20, ¶¶ 11, 14 & n.5 (in the Act 250 context) (citations omitted). As a result of Condition 7, the Project's compliance with the buffer requirement will not be addressed until after the permit is issued. We therefore conclude that

Condition 7 is an invalid condition subsequent, and we answer Question 1 in the affirmative to the extent it asks whether the DRB erred. Condition 7 must be **VACATED** and this matter must be **REMANDED** to the DRB to make findings of fact and conclusions of law addressing the requirements in Regulations § 3.7(2)(C)(2)(a), and, if necessary, hold additional hearings to collect sufficient evidence for it to make such findings and conclusions.

To be clear, our decision here has no bearing on the underlying merits or the timing of landscaping installations. On remand, the DRB must review the Project and determine whether the proposal will comply with § 3.7(2)(C)(2)(a) or whether "other mitigation will accomplish the objectives outlined for the . . . district[]." Regulations § 3.7(2)(C). The DRB may impose "reasonable conditions and safeguards as it deems necessary" to ensure compliance with the Regulations, but it cannot impose conditions which defer the question of compliance altogether. *See* 24 V.S.A. § 4464(b)(2).

While our determination here that remand is necessary, we continue our review of Appellant's remaining Questions, due to the history of these proceedings, and so as to provide our determinations on the remaining legal issues that Appellant presents.

## II. Question 2: Side yard landscaping

Question 2 asks whether the DRB erred in determining that the proposed side yard landscaping was adequate. Mr. Seaberg argues that VTRE's landscaping plans do not comply with Regulations §§ 4.6(3)(A) and (C), and therefore the plans do not meet the standards for conditional use approval. *See* Regulations § 3.7(2)(B)(7) (requiring plans "designed to conform to the terms and conditions of Section 4.6"). Pursuant to Regulations § 4.6(3)(A), landscaping "should include a combination of shade trees (deciduous and/or coniferous), deciduous and evergreen shrubs, well kept grasses and ground covers." In addition:

> Landscaping plans shall emphasize the use of both deciduous and coniferous shade trees in available yard area, especially front and side yards and parking areas. Shade trees shall be placed to interrupt the façades of buildings, to visually reduce the scale and bulk of large buildings, and to enhance environmental quality. . . .

Regulations § 4.6(3)(C).

7

Unfortunately, we cannot conduct an appropriate review of this issue because it is unclear how the DRB reached its conclusions. A municipality that elects to make its land use determinations subject to on-the-record review must apply the procedural requirements established in MAPA. *See* 24 V.S.A. § 4471(b). MAPA requires that final decisions of municipal panels "separately state findings of fact and conclusions of law." 24 V.S.A. § 1209(a). Additionally, the findings of fact must "explicitly and concisely restate the underlying facts that support the decision" and be "based exclusively on evidence" in the record. Id. §§ 1209(a), (b). The conclusions of law must be based on those findings. Id. § 1209(c). The requirement that decisions afforded on-the-record review include findings of fact is largely to provide "a clear statement to the parties and the court in the event of an appeal on what was decided and how the decision was reached." In re Appeal of Leikert, No. 2004-213, slip op. at 1, 2004 WL 5582097 (Vt. Nov. 1, 2004) (unpublished mem.) (discussing, in detail, the important functions served by findings of fact). This Court has been cautioned against "fill[ing] in the gaps" left by deficient decisions. Id. at 2. As we have recognized, "[w]hen a municipality elects to make its land use determinations subject to on-the-record review, it is committing to meeting the procedural requirements in [the Municipal Administrative Procedure Act] or risking the remand of its determinations and, consequently, the loss of some of its earlier efforts." Brandon Plaza, No. 128-8-10 Vtec at 6–7 (Mar. 26, 2012).

Here, the DRB noted that VTRE provided a landscaping plan and renderings showing views from various locations. *See* DRB Decision at 4. The DRB made limited factual findings: "Three new red maples are proposed along the driveway. Three existing trees just north of the duplex are proposed to remain." Id. The DRB also paraphrased Regulations § 4.6(3)(C), requiring "shade trees to be placed to interrupt the façades of buildings and to visually reduce the scale and bulk of large buildings," but did not explain how the proposal satisfies the applicable standards. *See* id. There is no reason given for the conclusion that "the proposed screening and landscaping is appropriate for the intended use and site location." *See* id. at 5. In rendering legal conclusions, the DRB "does not fulfill its adjudicative responsibilities by merely reciting the legal standards . . . [r]ather, the panel must also specifically state why the facts of the proposed project fit within those applicable legal standards." In re Buss Conditional Use Application, No. 130-10-12 Vtec,

slip op. at 2–3 (Vt. Super. Ct. Apr. 29, 2013) (Durkin, J.).  If we were to proceed with our review, we would be "in the position of perusing the record and making [our] own assessment of the credibility of the witnesses and the weight to be given the evidence."  *See* <u>Appeal of Leikert</u>, No. 2004-213 at 2.  We cannot engage in that type of analysis in an on-the-record appeal.  *See* <u>id</u>.; <u>In re Williams Amended CU Permit</u>, No. 40-4-13 Vtec, slip op. at 4 (Vt. Super. Ct. Jan. 10, 2014) (Durkin, J.).

Because both the factual findings and conclusions of law lack specificity or any explanation of the DRB's reasoning, we conclude that we must **REMAND** this issue to the DRB, so that it may amend its Decision to incorporate more specific and sufficient findings and conclusions or hold additional hearings to collect the evidence necessary for it to make such findings and conclusions.

### III.  Question 3: Screening of garbage collection areas

Question 3 asks whether the DRB erred in determining that storing garbage in the garage meets the screening requirements for garbage collection areas.  Pursuant to Regulations § 4.6(5)(A), "[s]ufficient screening shall be provided if the DRB determines that topographical or other barriers do not provide adequate screening.  Screening may be required . . . [a]djacent to garbage collection . . . areas."  We have previously held that "the screening provided for in § 4.6(5) is visual" in nature.  <u>VTRE Invs. CU</u>, No. 36-3-18 Vtec, slip op. at 9 (Vt. Super. Ct. Envtl. Div. Dec. 28, 2018) (Durkin, J.).  Mr. Seaberg contends that storing garbage in the garage does not address screening for the driveway, where he believes the garbage will be collected.  He also contends that the DRB should have required VTRE to designate a screened exterior collection area.

The DRB's Decision does not discuss screening requirements. The Decision does not cite the applicable standards, nor does it contain factual findings related to screening.  *See* DRB Decision at 4–5. Without any findings, the DRB concludes that "the proposed screening . . . is appropriate for the intended use and site location." *See* <u>id</u>. at 5. The Decision also includes Condition 4, requiring that "[a]ll trash and recycling receptacles shall be stored inside of the garage(s) or in a screened structure approved by the Zoning Administrator."  <u>Id</u>. at 5–6.  In the absence of factual findings or conclusions of law that "provide a transparent recitation of the

9

reasons" for this condition, we cannot determine whether the DRB erred in imposing it. *See* Brandon Plaza, No. 128-8-10 Vtec at 11 (Mar. 26, 2012).

The DRB has broad discretion over screening requirements. *See* Regulations § 4.6(5)(A) (requiring screening "if the DRB determines that . . . other barriers do not provide adequate screening); Id. § 4.6(5)(A)(2) ("Screening *may* be required . . . [a]djacent to garbage collection areas . . . .") (emphasis added). Yet the Decision here does not provide enough information to review the DRB's conclusions even for abuse of discretion. Therefore, we must **REMAND** to the DRB so that it may amend its Decision to incorporate findings and conclusions on the issue of screening, or hold additional hearings to collect the evidence necessary for it to make such findings and conclusions. On remand, if the DRB ultimately decides to impose certain conditions related to screening, the DRB must include in its decision findings of fact and conclusions of law that support such conditions. *See* Brandon Plaza, No. 128-8-10 Vtec at 11 (Mar. 26, 2012).

## IV.     Question 4: Stormwater impacts on neighboring properties

Question 4 asks whether the DRB erred in determining that the Project would not result in additional stormwater directed toward neighboring properties. Pursuant to Regulations § 3.12(2)(E), "[a]ll development must provide for an adequate stormwater drainage system to ensure that the existing drainage patterns are not altered in a manner to cause an undue adverse impact on neighboring properties." Mr. Seaberg notes that the Project is located "very close" to the septic field of the neighboring property where he resides, and he argues that the record does not support a determination that the proposed drainage swale will effectively direct water away from the neighboring septic system and the neighboring property in general.

Castine maintains that the drainage swale is adequate as designed and certified by engineer John Grenier. Castine asserts that the swale will direct runoff toward the rear of the Property and away from neighboring property, and furthermore that the site and erosion control plans provide for the removal of certain fallen trees to reduce the current ponding of water and improve drainage toward the river.

In reaching its conclusion on stormwater issues, the DRB considered a site plan prepared by Grenier Engineering, a report by Bannon Engineering, and testimony at the public hearings. *See*, DRB Decision at 5. The DRB's Decision states  that "[a] drainage swale is proposed in the

10

rear of the duplex and noted to direct drainage away from off-site properties including neighboring septic," and goes on to conclude that "no additional stormwater management is required for the Project under review." *See* id.  The DRB also imposed Condition 2(b) requiring "[a]n updated Erosion Control Plan"

The DRB's Decision does not cite the stormwater standards applicable to the Project.  *See* id.; *see also, e.g.*, Regulations § 3.12(2)(E), (requiring "that the existing drainage patterns are not altered in a manner to cause an undue adverse impact on neighboring properties").  The DRB did not make findings on the effectiveness of the proposed drainage system or the impact on neighboring properties, and it did not explain the reason for imposing Condition 2(b).  *See* DRB Decision at 5–6.  The Decision does not explain how "the facts of the proposed project fit within [the] applicable legal standards." *See* Buss Conditional Use Application, No. 130-10-12 Vtec at 2–3 (Apr. 29, 2013).  Without an explicit restatement of "the underlying facts that support the decision," we cannot determine whether the record contains sufficient evidence to support the DRB's conclusion. *See* 24 V.S.A. § 1209(a).

For these reasons, we conclude that we must also **REMAND** this issue so that the DRB may amend its Decision to incorporate more specific and sufficient findings and conclusions or hold additional hearings to collect the evidence necessary for it to make such findings and conclusions.  On remand, if the DRB decides to approve the Project subject to conditions, it must include findings of fact and conclusions of law that support those conditions.

### V.      Question 5: Additional stormwater management

Question 5 asks whether the DRB erred in determining that no additional stormwater management was required.  *See* DRB Decision at 5 ("The Board concludes no additional stormwater management is required for the project under review . . . .").  Mr. Seaberg's concern here appears to be the same as his concern above regarding stormwater runoff, and he relies on largely the same argument.  He contends that the evidence and testimony should have led the DRB to require additional stormwater management to "ensure that existing drainage patterns are not altered in a manner to cause an undue adverse impact on neighboring properties."  *See* Regulations § 3.12(2)(E).

11

As we explained in our discussion of Question 4 above, the DRB's Decision does not contain findings of fact related to the proposed drainage system and does not explain how the proposal satisfies the applicable stormwater standards in the Regulations. *See* DRB Decision at 5. Our review in this on-the-record appeal is limited to upholding the DRB's findings of fact if they are supported by substantial evidence in the record and determining whether the DRB's legal conclusions are supported by those findings. *See* In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 7, 186 Vt. 568. Without sufficient factual findings or legal conclusions, we cannot conduct our review. We must therefore also **REMAND** this issue so that the DRB may amend its Decision to incorporate more specific and sufficient findings and conclusions or hold additional hearings to collect the evidence necessary for it to make such findings and conclusions.

## VI.     Question 6: Whether a stormwater plan should be required

Questions 6 asks whether the DRB erred in determining that no stormwater plan was required. The Regulations require a stormwater plan for any development creating more than 0.5 acre of additional impervious area. *See* Regulations § 3.12(2)(F) (("All development that creates more than ½ (one-half) acre of additional impervious surface must . . . submit a stormwater management plan . . . ."). For conditional uses creating less than 0.5 acre of additional impervious area, the DRB has discretion to require a stormwater plan. *See* Regulations § 3.7(2)(B)(8) ("The applicant shall, at the request of the DRB, submit a plan for the management of stormwater generated by the development.").

Castine asserts that the Project will create only 0.12 acre of additional impervious surface, and therefore a stormwater management plan is not required under Regulations § 3.12(2)(F). However, as we have said, the DRB's Decision does not cite the applicable stormwater standards. *See* DRB Decision at 5. The DRB did not render any findings or conclusions as to the impervious surface generated by the Project. *See* id. As such, we are unable to conduct our review. *See* 24 V.S.A. §§1209(a)–(c); *see also* Brandon Plaza, No. 128-8-10 Vtec at 3 (Mar. 26, 2012) ("[W]e do not take new evidence or complete our own determination of the facts."). We must therefore also **REMAND** this issue so that the DRB may amend its Decision to incorporate more specific and sufficient findings and conclusions or hold additional hearings to collect the evidence necessary for it to make such findings and conclusions.

**VII.  Questions 7 and 8: Compatibility with the existing site and neighboring properties**

Questions 7 and 8 ask whether the DRB erred in determining that the mass and scale of the Project was compatible with the existing site and neighboring properties, respectively. Standards for the UMR District require a finding that "the proposed development is designed in a manner compatible with the area's rural character." Regulations § 3.7(2)(C)(2)(e). As relevant here, building designs "shall reinforce the rural landscape . . . through contextual scale and orientation of the buildings within the site," and "should generally be designed with a pitched roof and be of a mass and scale compatible with neighboring properties and the site. Id. §§ 3.7(2)(C)(2)(e)(i)–(ii).

Mr. Seaberg notes that his comments and those of DRB members at the April 3, 2018 hearing reflect concerns about the height and bulk of the proposed duplex in relation to other buildings on the site and neighboring properties. Castine argues that the DRB's concerns were adequately addressed through revised plans and elevations presented at the May 15, 2018 hearing.

The DRB's Decision states the applicable standards and concludes that "the proposed development is designed in a manner compatible with the area's rural character and the proposed duplex will be compatible in scale and orientation of the buildings within the site." *See* DRB Decision at 5. However, the DRB made only one reference to the design of the proposed duplex: "The Applicant provided building elevation drawings." *See* id. The DRB did not render findings of fact related to the appearance, mass, scale, or orientation of the proposed duplex. *See* id. The Decision does not characterize the existing site or neighboring properties. *See* id. The Decision does not discuss the evidence relied upon or explain how "the facts of the proposed project fit within [the] applicable legal standards." *See* Buss Conditional Use Application, No. 130-10-12 Vtec at 2–3 (Apr. 29, 2013).

Because both the factual findings and conclusions of law lack specificity or any explanation of the DRB's reasoning, we conclude that we must also **REMAND** this issue so that the DRB may amend its Decision to incorporate more specific and sufficient findings and conclusions or hold additional hearings to collect the evidence necessary for it to make such findings and conclusions.

## VIII.    Question 9: The Character of the Area

Question 9 asks whether the DRB erred in determining that the Project will not adversely affect the character of the area.  Mr. Seaberg's concerns here mostly relate to the height and bulk of the proposed duplex.  Pursuant to Regulations § 3.7(2)(A), a project "shall not result in an undue adverse effect on . . . [t]he character of the area affected as defined by the purpose of the zoning district within with the project is located and specifically stated policies and standards of the Stowe Town Plan."  The Property is in the UMR district, the purpose of which is "to control development along the 'upper' Mountain Road in a manner that allows for residential, recreation and low-density commercial uses of property while preserving the rural character of the landscape, discouraging strip development and promoting the ongoing viability of existing land uses."  Regulations § 5.12(1).

The DRB found that "the general vicinity of the project includes lodging facilities, multi-family dwellings, and single-family dwellings."  DRB Decision at 3.  After stating the purpose of the UMR District, the DRB noted that "[t]he Applicant is proposing a residential duplex. Id.  Based only on these findings, the DRB concluded that "the proposed use will not adversely affect the character of the area as defined in the Town of Stowe Zoning Regulations. *See* id.  Once again, this leaves the Court without sufficient information to review the DRB's Decision. We do not know what findings the DRB relied on or how it reached its conclusion.

Because both the factual findings and conclusions of law lack specificity or explanation, we must **REMAND** this issue so that the DRB may amend its Decision to incorporate more specific and sufficient findings and conclusions or hold additional hearings to collect the evidence necessary for it to make such findings and conclusions.

## Conclusion

For the reasons detailed above, we must **VACATE** Condition 7 and **REMAND** the application to the Town of Stowe DRB for clarification of its findings of fact and conclusions of law.  We also **REMAND** so that the DRB may more fully address the deficiencies identified above in our analysis of Appellant's Questions 2 through 9.  We recognize that municipal boards are often made up of lay people serving as volunteers, many of whom have limited training in

14

adjudicative matters.  We hope that this decision will assist the DRB in understanding how to fulfill its role of ensuring that property owners and interested persons receive an adjudicative process that is fair, comprehensible, and not unnecessarily delayed.  We also note that the deficiencies identified in the DRB's decision can be addressed without undue difficulty.  Future decisions should note the applicable standards; render findings of fact specific to the proposal and based on the evidence presented; and relate those findings to the applicable standards to arrive at a conclusion.

This concludes the matter before the Court.  A Judgment Order accompanies this Decision.


Electronically signed on June 30, 2020 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division