NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 20

No. 2015-168

| | |
|---|---|
| In re Treetop Development Company Act 250 Development <br> (Treetop at Stratton Condominium Association, Inc., Appellant) | Supreme Court <br><br> On Appeal from <br> Superior Court, <br> Environmental Division <br><br> September Term, 2015 |

Thomas G. Walsh, J.

A. Jay Kenlan of Kenlan, Schwiebert, Facey & Goss, P.C., Rutland, for Appellant.

Lisa B. Shelkrot of Langrock Sperry & Wool, LLP, Burlington, for Appellees.

William H. Sorrell, Attorney General, and Gavin J. Boyles and Scot L. Kline, Assistant Attorneys General, Montpelier, for Natural Resources Board.

PRESENT:  Dooley, Skoglund and Eaton, JJ., and Tomasi and Bryan (Ret.), Supr. JJ., Specially Assigned


¶ 1.  **EATON, J.**  This appeal is the latest chapter in an ongoing dispute between the Treetop at Stratton Condominium Association, Inc. (Association) and the Stratton Corporation, Treetop Development Company, LLC, Treetop Three Development Company, LLC, and Intrawest Stratton Development Corporation (collectively, Stratton) over an improperly constructed stormwater management system.  The pending matter follows the Association's appeal of the District 2 Environmental Commission's (Commission) refusal to impose additional

conditions on Stratton's Act 250 permit, which the Environmental Division of the Superior Court determined to be invalid and unenforceable. For the reasons stated herein, we affirm.

¶ 2. On November 18, 2002, the District 2 Environmental Commission issued Act 250 Permit #2W1142 to Stratton for the construction of twenty-five three-unit townhouses (the Treetop Project) in the Town of Stratton, Vermont. Included in the Act 250 permit was approval for the development and construction of the infrastructure required for the occupancy, use, and management of the Treetop Project and associated infrastructure, including a stormwater management system.

¶ 3. A Stratton Corporation affiliate, the Treetop Development Company, LLC, completed construction of the Treetop Project in 2006, at which point all seventy-five townhouses were sold and conveyed to third-party owners. Each individual owner acquired an undivided percentage interest in the Treetop Project's common areas and facilities, including the stormwater management systems, which were managed and administered by the Association.

¶ 4. In response to problems with the stormwater management system, the Association filed suit against Stratton in 2009 seeking damages and remediation for various construction defects in the Treetop Project, including those involving the stormwater management system. The parties ultimately reached a settlement agreement, which, relevant to this appeal, required Stratton to apply for and obtain corrective permit amendments and pay for any work necessary to bring the stormwater management aspects of the Treetop Project into compliance with its Act 250 permit. On August 13, 2012, Stratton filed an application with the Commission to amend its Act 250 permit to reflect deviations from the original permit, specifically "to authorize changes in the original as-built plans to the permit plans submitted." These changes included repairs and

modifications to the stormwater management system necessary to fix leaks and seepage and to bring the system into compliance with the terms of General Permit 3-9010.[1]

¶ 5. In its Findings of Fact and Conclusions of Law, the Commission expressed its concern over Stratton's "failure to build its stormwater system in compliance with its prior permits." The Commission conceded that "[w]hile Stratton's plan is not the only way to [correct significant stormwater problems], it is the plan on the table[,] . . . [and it] has been approved by the Agency of Natural Resources and is implementable immediately." Emphasizing the importance that "the water quality and safety issues be resolved satisfactorily as soon as possible," the Commission concluded that "issuing a permit with conditions is the most effective way to achieve this outcome." The Commission provided that it would add "protections in the permit to ensure that solutions proposed by Stratton are effective in addressing the problems," and that it would "retain jurisdiction over these matters." In its conclusion, the Commission found that the Treetop Project would be in compliance with Act 250 criteria if it was "completed and maintained as represented in the application and other representations of the Applicants, and in accordance with the findings and conclusions of this decision and the conditions [herein]."

¶ 6. Following a decision by the Commission on October 21, 2013 to approve Act 250 Permit #2W1142-D (amended permit) with conditions, both Stratton and the Association moved to alter and amend the amended permit. After making minor changes, the Commission issued a Memorandum of Decision on November 15, 2013, granting the amended permit. The amended permit included several conditions, including conditions that required Stratton to repair the stormwater retention pond pursuant to approved plans on or before September 1, 2014, and to

---

[1] The Treetop Project's stormwater management system was originally approved under Stormwater Discharge Permit #1-1537. That permit expired on August 28, 2007 and was replaced by General Permit 3-9010, authorizing previously permitted stormwater discharges to waters that are not principally impaired by stormwater runoff. General Permit 3-9010, issued under the State Stormwater Permit Program, requires Stratton to correct any deficiencies in the stormwater management system resulting from substantial deterioration.

3

provide weekly reports on the progress of the repairs until completion. By that time of year, however, the weather made further site work impossible. Relevant to this appeal, permit Condition 14 provided:

> The Commission reserves the right to review erosion, the ability of the land to hold water, stormwater management and revegetation issues outlined in these proceedings and to evaluate and impose additional conditions as needed.

(Emphasis added.). Importantly, neither party appealed the amended permit, which became final and binding on December 15, 2013.

¶ 7. In January 2014, the Association provided the Commission with information about the status of the stormwater management system, including a letter from Stratton's engineer, plans for remediation dated December 13, 2013, and the Association's response to those filings. Shortly thereafter, on February 7, 2014, the Commission issued a Notice of Reconvened Hearing on the amended permit. The notice was issued pursuant to the authority the Commission reserved unto itself under Condition 14 and indicated the Commission's intent to discuss whether additional conditions were necessary to address problems with the stormwater management system. Following hearings, the Commission issued a Memorandum of Decision on May 16, 2014 "declin[ing] to impose additional permit conditions with respect to [the amended permit]," and affirming the "adequacy of the conditions of the permit, which was not appealed." The Commission also noted that, "given there is an active enforcement action [underway] by both [the Agency of Natural Resources] and the [Natural Resources Board], we are assured that there will be oversight regarding compliance with the relevant state requirements, including conditions of [the amended permit], which were not appealed."[2]

---

[2] The enforcement action, Docket No. 106-7-14 Vtec, was initiated on April 21, 2014, when the Natural Resources Board (NRB) and Stratton filed a proposed Assurance of Discontinuance. The Association was subsequently granted limited rights to intervene in the

4

¶ 8.    The Association timely appealed the Commission's May 16, 2014 Memorandum of Decision declining to impose further conditions on Stratton to the Environmental Division of the Superior Court.  Stratton then moved to dismiss the appeal, alleging that the questions raised on appeal were either collateral attacks on the unappealed amended permit or outside the scope of the Environmental Division's de novo review.  On November 14, 2014 the Environmental Division dismissed the appeal, finding, relevant to the matter now before this Court, that:

> [t]he sole purpose of Condition 14 is to ensure compliance with the initial Permit and Permit Amendment.  This authority does not belong to the Commission.  Rather, it rests with the Natural Resources Board's authority to ensure compliance with an Act 250 Permit and its conditions through its enforcement powers . . . the Association cannot use Condition 14 to privately enforce the Permit or Permit Amendment.

Treetop Dev. Co. Act 250 Application, No. 77-6-14 Vtec, slip op., at 3 (Envtl. Div. Vt. Sup. Ct. Nov. 14, 2014), https://www.vermontjudiciary.org/GTC/Environmental/Opinions.aspx (citations omitted).  The Environmental Division also later denied the Association's motion for relief from judgment, in which the Association claimed that the Environmental Division acted outside its authority in concluding that Condition 14 was unenforceable because the amended permit was not appealed.  Treetop Dev. Co. Act 250 Application, No. 77-6-14 Vtec, slip op., at 3 (Envtl. Div. Vt. Sup. Ct. Mar. 25, 2015), https://www.vermontjudiciary.org/GTC/Environmental/Opinions.aspx.  In response, the Environmental Division noted that "[i]t would be irrational to read the Commission's decision on the [amended permit] as granting an Act 250 permit despite insufficient findings of compliance with Act 250," and that "a district commission simply cannot use a permit condition to reserve the authority to reopen a final and binding Act 250 permit sua sponte in order to enforce the permit or impose conditions."  Id.  The

---

matter, as allowed by 10 V.S.A. § 8020.  That matter is currently ongoing before the Environmental Division.

5

Environmental Division further provided that "[t]he injustice alleged by the Association stems from its free, calculated, and deliberate choice not to take an appeal" from the amended permit. Id.

¶ 9.    This appeal from the Environmental Division's decision followed.  Our review of "issues of law or statutory interpretation is de novo." In re Vill. Assocs. Act 250 Land Use Permit, 2010 VT 42A, ¶ 7, 188 Vt. 113, 998 A.2d 712.  De novo review allows this Court to proceed with a nondeferential, on-the-record review.  See In re Gulli, 174 Vt. 580, 582, 816 A.2d 485, 488 (2002) (mem.) ("Questions of law are reviewed de novo, allowing us to proceed with a nondeferential, on-the-record review.").

¶ 10.    The Association alleges that the Environmental Division erred in granting Stratton's motion to dismiss the appeal because Condition 14 is a valid and enforceable permit condition reserving jurisdiction over the stormwater system at the Treetop Project and allowing the Commission to amend or add conditions as necessary to bring the system into compliance with Act 250.  The Association also asserts that it based its decision not to appeal the amended permit on the Commission's reservation of authority to impose further conditions in order to ensure the stormwater management system's compliance with Act 250, and that Stratton's motion to dismiss is a collateral attack on Condition 14.  Stratton, on the other hand, contends that under the Association's view, Condition 14 amounts to a key that can be used to re-open the door to amend the permit at any time and impose additional conditions, preventing finality.  Both Stratton and the NRB argue that Condition 14 is an unenforceable condition subsequent and that the Association's appeal is a collateral attack on the amended permit.[3]  We find that condition 14

---

[3]    Although this Court recently addressed an Act 250 permit subject to conditions reserving jurisdiction over traffic congestion and safety impacts in In re Champlain Parkway Act 250 Permit, 2015 VT 105, ¶ 1, ___ Vt. ___, ___ A.3d ___, we have yet to specifically address the Commission's discretion to impose conditions that reserve jurisdiction over a project, either in part or in its entirety, after making affirmative findings under the relevant criteria.  In

is invalid and affirm the Environmental Division's decision, rendering Condition 14 unenforceable.

¶ 11. Act 250, codified at 10 V.S.A. §§ 6001 through 6093, was enacted "to protect Vermont's lands and environment by requiring statewide review of 'large-scale changes in land utilization.' " In re Audet, 2004 VT 30, ¶ 13, 176 Vt. 617, 850 A.2d 1000 (mem.) (quoting Comm. to Save Bishop's House, Inc. v. Med. Ctr. Hosp. of Vt., Inc., 137 Vt. 142, 151, 400 A.2d 1015, 1020 (1979)).  To that end, it falls to the nine District Environmental Commissions to consider Act 250 permit applications and amendments in the context of the ten statutory criteria listed in 10 V.S.A. § 6086(a).  The Commissions may approve or deny any such applications, although approval requires that the Commissions make affirmative findings under all ten statutory criteria before issuing a permit.  See In re SP Land Co., LLC, 2011 VT 104, ¶ 25, 190 Vt. 418, 35 A.3d 1007 (Act 250 "[r]ule 21 mandates that a permit may issue only when positive findings of fact and conclusions of law have been made under all criteria and subcriteria.  It follows, therefore, that findings of fact and conclusions of law on only some criteria—but not all—are not equivalent to a permit.").  Any changes to the permit or the conditions therein must be made pursuant to the formal permit amendment procedure outlined in the Act 250 Rules. Appeals of the Commission's decision, including decisions approving or denying a permit or the conditions therein, must be filed within thirty days of the date of the decision.  10 V.S.A. § 8504(a).

¶ 12. In order to ensure continued compliance with the statutory criteria, the Commission is entitled to grant conditional approval by imposing reasonable conditions on a

---

Champlain Parkway, the Environmental Division found that the project might, rather than would, cause unreasonable traffic congestion and imposed conditions requiring future monitoring and reporting as well as conditions reserving the Commission's jurisdiction over the matter.  Id. ¶ 12. Neither party challenged the condition, and this Court did not consider the court's authority to impose conditions in the absence of an actual affirmative finding.  Id. ¶ 12 n.3.

project. See id. § 6086(c); Act 250 Rule 32(A), 6 Vt. Code of Rules 16-5-200, available at https://perma.cc/VJ7H-YRPU). Permissible conditions include those with prospective application that are intended to alleviate adverse impacts that either are or would otherwise be caused or created by a project, or those necessary to ensure that the development is completed as approved, such as those requiring permittees to take specific action when triggered by certain events, incorporating a schedule of actions necessary for continued compliance with Act 250 criteria, and requiring future compliance related filings, including affidavits of compliance with respect to certain permit conditions. See, e.g., In re North East Materials Grp. LLC Act 250 JO #5-21, 2015 VT 79, ¶ 27, ___ Vt. ___, 127 A.3d 926 ("[P]ermits are frequently issued with conditions and requirements mitigating the impact of particular development"); In re R.E. Tucker, Inc., 149 Vt. 551, 557-58, 547 A.2d 1314, 1318-19 (1988) (approving condition in land use permit placing limitations on where gravel crusher could be located within tract because severity of noise pollution depended on placement). For example, this includes conditions limiting development to areas of land subject to Act 250 jurisdiction, establishing hours of operation, directing the placement of specific machinery, and requiring reclamation following completion of a project.

¶ 13. The power to enforce compliance with Act 250 permits and the underlying conditions is vested exclusively in the NRB and the Agency of Natural Resources (ANR), and not with the Commission. See 10 V.S.A. § 6027(g) (authorizing NRB to "initiate enforcement" of Act 250 permits and to "petition the Environmental Division for revocation" of Act 250 permits for, among other things, "noncompliance with any permit or permit condition."); id. § 8003 (stating that NRB has discretion to institute enforcement actions); id. § 8004 (providing that NRB and ANR act cooperatively to enforce Act 250). It therefore falls to the NRB, and not

8

the Commission, to determine whether violations of Act 250, or permits issued thereunder, exist and to exercise the discretion granted under 10 V.S.A. § 6027(g) to initiate enforcement actions.[4]

¶ 14. By its terms, Condition 14 reserves continuing jurisdiction over the stormwater system at the Treetop Project, creating for the Commission a mechanism to continuously amend the permit as necessary to redress future Act 250 violations or failures under the terms of the approved project by adding additional conditions. Not only does this exceed the Commission's authority, which is limited to considering permit applications in the context of the ten statutory criteria and either approving or denying the application, and amending permits under the procedure outlined in In re Stowe Club Highlands, 166 Vt. 33, 37, 687 A.2d 102, 105 (1996), but it prevents finality, an integral part of the land use permitting process. Furthermore, unlike a condition with prospective application intended to alleviate adverse impacts, Condition 14 allows the Commission to circumvent the requirement that projects which have been permitted satisfy the statutory criteria and prospectively expropriate the NRB's enforcement authority, effectively creating a de facto mechanism of internal enforcement for the Commission. This reservation of extra-statutory authority renders the Commission's permit approval illusory, simultaneously approving stormwater system remediation under a set of parameters and reserving the authority to alter these parameters at any time, including when necessary to correct violations of Act 250. Such an open-ended condition, effectively endowing the Commission with the prospective extra-statutory authority to re-open the amended permit and perpetually act, is an invalid condition subsequent.[5]

---

[4] As indicated above, enforcement proceedings against Stratton were initiated by the NRB on April 21, 2014, and the Association was subsequently granted limited rights to intervene in the matter as an interested party. While interested parties may participate in enforcement proceedings, they are without the right to initiate such proceedings or raise additional violations.

[5] Although not binding precedent in this Court, we note that the former Environmental Board likewise found conditions subsequent to be impermissible substitutions for affirmative

9

¶ 15. Although the permit itself was unappealed, and is therefore final and binding on the parties, this does not make Condition 14 enforceable. In our discussions of the failure to appeal zoning permits, this Court has consistently held that the parties are bound by the terms of the permit, even where the municipal body's actions in granting the permit exceeded their authority. See City of S. Burlington v. Dep't. of Corrections, 171 Vt. 587, 588-89, 782 A.2d 1229, 1230 (2000) (mem.) (binding permitee following untimely challenge to validity of zoning permit condition where municipal body lacked jurisdiction over permitee due to sovereign immunity); Levy v. Town of St. Albans, 152 Vt. 139, 142, 564 A.2d 1361, 1363 (1989) (binding permitee following untimely challenge to validity of zoning permit where administrator who issued permit lacked authority to do so). Condition 14, however, does not merely bind the parties to the terms of the amended permit; rather, it seeks to prospectively expand the Commission's authority to include enforcement, allowing it to circumvent the procedure for permit amendments and to continuously reconsider the Treetop Project's compliance with the Act 250 criteria. It is the very infirmity of Condition 14—the creation of prospective, extra-statutory authority—that renders the condition unenforceable. To hold otherwise would do more than bind the parties, it would indissolubly expand the Commission's jurisdiction, creating perpetual uncertainty as to the terms of the amended permit. For this reason, the Court is not bound to uphold the Commission's self-granted enforcement authority simply because neither party chose to appeal under 10 V.S.A. § 8504(a). We conclude, therefore, that Condition 14 is unenforceable.

---

findings under the Act 250 criteria. See Town of Stowe, #100035-9-EB (May 22, 1998), http://nrb.state.vt.us/lup/decisions.htm; OMYA, Inc., #1R0271-9-EB (Feb. 7, 1991), http://nrb.state.vt.us/lup/decisions.htm; Norman R. Smith, Inc. & Killington Ltd., #1R0584-EB-1 (Sept. 21, 1990), http://nrb.state.vt.us/lup/decisions.htm, aff'd, In re Killington, Ltd., 159 Vt. 206, 616 A.2d 241 (1992); Paul E. Blair Family, #4C0388-EB (June 16, 1980), http://nrb.state.vt.us/lup/decisions.htm.

¶ 16. We note that this decision does not affect the Association's right, as a matter of law, to appeal the Commission's decisions generally or to seek permit amendments. The Association claims that although it believed the amended permit to be significantly deficient, it relied on the Commission's right to impose further conditions if necessary to ensure compliance with Act 250 rather than file an appeal, and that the Environmental Division's decision deprives them of their right to challenge this decision. An interested party's right to appeal a decision by the District Commission is clearly defined by statute. Under 10 V.S.A. § 8504(a), any person aggrieved by an act or decision of the District Commission may file an appeal in the Environmental Division within thirty days. This includes the Commission's decision granting the amended permit. Had the Association appealed the amended permit to the Environmental Division, it would have been entitled to challenge the sufficiency of the amended permit and its conditions, including those regarding the stormwater management system. Furthermore, there is a formal procedure regarding the amendment of permit conditions, which depends on factors outlined in In re Stowe Club Highlands, 166 Vt. at 37, 687 A.2d at 105. These factors are intended to "assist in assessing the competing policies of flexibility and finality in the permitting process." In re Nehemiah Assocs., 168 Vt. 288, 294, 719 A.2d 34, 37 (1998). They include: whether were (1) "changes in factual or regulatory circumstances beyond the control of a permittee"; (2) "changes in the construction or operation of the permittee's project, not reasonably foreseeable at the time the permit was issued"; and (3) "changes in technology." In re Stowe Club Highlands, 166 Vt. at 37, 687 A.2d at 105. The Association chose not to exercise these rights, however, and the unappealed amended permit is final and binding. For this reason, despite our decision affirming the Environmental Division's decision, the Association has not been denied a mechanism to challenge the Commission's decisions generally. That right existed at the time the permit was issued and was not exercised. It will also exist regarding any amended

permits Stratton may seek and which may properly issue following a new application, should those circumstances be presented.

¶ 17. This result does not leave the Association without possible recourse relative to Stratton's alleged violations of the amended permit and Act 250, generally. As indicated above, both NRB and ANR have undertaken enforcement actions against Stratton pursuant to their authority in 10 V.S.A. §§ 6027(g) and 8004. The agencies have indicated that "there will be oversight regarding compliance with the relevant state requirements, including conditions of [the amended permit], which were not appealed." The NRB and ANR are empowered to enforce Act 250 and the amended permit and the Association, as an interested party, may participate, and in fact is participating, in those proceedings by the rights vested under 10 V.S.A. § 8020. The Association remains free to raise any concerns it might have about Stratton's compliance with the permit conditions and may request that the NRB or ANR enforce or investigate possible violations under 10 V.S.A. § 8005(a)(2).

Affirmed.

FOR THE COURT:

_____

Associate Justice

12