NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 44

No. 24-AP-126

| | |
|---|---|
| In re Costco Wholesale Administrative Decision (R.L. Vallee, Inc. & Timberlake Associates L.L.P., Appellants) | Supreme Court |
| | On Appeal from Superior Court, Environmental Division |
| | March Term, 2025 |

Thomas S. Durkin, J.

Alexander J. LaRosa of MSK Attorneys, Burlington, for Appellant/Cross-Appellee R.L. Vallee, Inc.

David L. Grayck, North Bennington, for Appellant/Cross-Appellee Timberlake Associates, L.L.P.

Mark G. Hall of Paul Frank + Collins P.C., Burlington, for Appellee/Cross-Appellant.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **CARROLL, J.** This appeal arises from four coordinated Environmental Division proceedings involving the Act 250 and municipal permits governing Costco Wholesale Corporation's operation of a gas station on its property in the Town of Colchester, Vermont. Neighbors R.L. Vallee, Inc., and Timberlake Associates, L.L.P., argue that the trial court erred in: (1) failing to address all issues raised in their statements of questions in those proceedings; (2) denying their motion to dismiss the two Act 250 permit proceedings for failure to join the Vermont Agency of Transportation (AOT) as a necessary co-applicant; (3) concluding that Act 250 Rule 34(E) did not bar Costco from seeking a permit amendment allowing it to open the gas

station at limited hours; (4) determining that Costco did not need to seek amendments to its municipal and Act 250 permits before later operating the gas station at full-time hours; and (5) holding that Costco had satisfied all permit conditions necessary to operate at full-time hours, because this was beyond the scope of the court's jurisdiction. Costco cross-appeals, contending that its fulfillment of two permit conditions allowed it to operate full-time, rendering neighbors' arguments moot. We conclude that the issues related to full-time operation of the gas station present a live controversy, and that the Environmental Division otherwise had jurisdiction to review them. We further hold that the court addressed all related matters raised in neighbors' statement of questions and correctly concluded that Costco had no obligation to seek further permit amendments before it began operating the gas station full-time. We therefore affirm the court's conclusions on these points and hold that neighbors' remaining arguments are moot.

## I. Factual & Procedural Background[1]

¶ 2.     Costco operates a members-only retail store at its Colchester property located on Lower Mountain View and Hercules Drives, near Exit 16 off Interstate 89 and U.S. Routes 2/7.[2] It began seeking permits to operate a gas station at this location over a decade ago. Neighbors— both of whom operate gas stations in the vicinity of Exit 16—have been active participants in the subsequent permitting proceedings. Those proceedings are logistically bound up with an AOT project seeking to replace the existing Exit 16 interchange with a diverging diamond interchange in order to alleviate significant preexisting traffic concerns and congestion in the area (the DDI

---

[1]  The following background is derived from the record below and the Environmental Division's findings of fact, which are not challenged on appeal.

[2]  U.S. Routes 2 and 7 overlap between Burlington and Colchester. See V.R.E. 201 (providing that Court may take judicial notice of facts not subject to reasonable dispute); State v. Gignac, 119 Vt. 471, 475, 129 A.2d 499, 502 (1957) (recognizing that Court may "take judicial notice of the geography of the state," including location of roads).

2

Project). We begin by discussing, to the extent relevant here, these initial permits and related proceedings before turning to the background of the four coordinated cases before us in this appeal.

A. Earlier Proceedings

¶ 3. In 2011, Costco applied to the Colchester Development Review Board (DRB) for a municipal zoning permit allowing it to, among other things, operate a gas station adjacent to its retail store. Consultants for Costco and the town reviewed the traffic implications of the gas-station proposal and concluded that certain improvements were necessary to mitigate the project's impact on transportation in the area. The identified improvements centered around the intersection of Upper and Lower Mountain View Drive and Routes 2/7 near Exit 16, and therefore became known as the "MVD Improvements." The MVD Improvements were based on an analysis of the highest hourly traffic flows on weekdays—which fell during the afternoon peak hours—and were intended to mitigate the traffic impacts of the gas station when operating at full-time hours, as Costco had proposed. The MVD Improvements also formed part of AOT's larger DDI Project.

¶ 4. The DRB approved Costco's final-plat and site-plan applications in 2012 and issued a municipal permit. Condition 11(b) of the permit required Costco "to provide off-site mitigation in the form of contributing to [the MVD Improvements]," and further conditioned the issuance of a building permit on Costco's entrance into a memorandum of understanding (MOU) with the town "governing these off-site mitigations" and establishing a method of payment for Costco's proportional fair share of the cost.

¶ 5. Costco also applied to amend its Act 250 permit to allow for the operation of the proposed gas station in 2012. The Act 250 District #4 Environmental Commission issued Land Use Permit #4C0288-19C (Permit 19C) in January 2013. Like the municipal permit, Permit 19C contemplated that the gas station would ultimately operate at full-time hours. It included condition 29(a), which required Costco to construct or fund the MVD Improvements prior to utilization of the gas station unless the DDI Project was "under construction." Condition 29(e) in turn provided

3

that if AOT had "not commenced construction and made substantial progress toward completion of the [DDI Project]" and Costco wished to open the gas station, Costco must instead "pay for the evaluation and implementation of modified signal timings along the U.S. Route 2/7 corridor."

¶ 6.     Neighbors appealed both permits to the Environmental Division. The traffic impacts of the gas station were among the central issues in both appeals. There was no challenge to condition 11(b) of the municipal permit or condition 29(a) or (e) of Permit 19C; instead, neighbors asked the court to impose a further condition prohibiting Costco from operating the gas station until the DDI Project was complete. Recognizing the possibility that the DDI Project could take AOT over a decade to finish, the court declined to impose such a condition. It reasoned that the MVD Improvements or signal-timing modifications would mitigate any traffic impacts resulting from Costco's project.

¶ 7.     Neighbors did not appeal the Environmental Division's decision on the municipal permit, but they sought this Court's review of the traffic-mitigation issue under the Act 250 permit. In 2016, we affirmed the court's conclusion that the proposed improvements were sufficient to mitigate any adverse traffic impacts caused by the project. In re Costco Stormwater Discharge Permit, 2016 VT 86, ¶¶ 11-14, 202 Vt. 564, 151 A.3d 320.

¶ 8.     As contemplated by the municipal permit, Costco and the town entered an MOU concerning Costco's traffic-mitigation proposal. The MOU stated:

> [The] Town of Colchester recognizes that the traffic improvements of the Act 250 approval fulfill the requirement of the DRB Approval for off-site mitigation. Costco must comply with the Traffic Mitigation requirements of its Act 250 Approval that will therefore satisfy Condition 11b of the [DRB] Approval . . . such that the building permit for the Project can be issued.

¶ 9.     Meanwhile, AOT received Act 250 permits for the DDI Project in 2016. Neighbors appealed to the Environmental Division, which approved AOT's project in 2018. They then appealed to this Court. In 2019, we affirmed in part, reversed in part, and remanded the matter on

4

one issue. In re Diverging Diamond Interchange SW Permit, 2019 VT 57, ¶ 1, 210 Vt. 577, 218 A.3d 564. The following year, after trial on remand, the Environmental Division again approved AOT's Act 250 application for the DDI project. Vallee appealed, and we affirmed. In re Diverging Diamond Interchange Act 250, 2020 VT 98, ¶ 1, 213 Vt. 480, 247 A.3d 499. Neighbors were also involved in litigation concerning AOT's condemnation proceedings related to the DDI Project. See Agency of Transp. v. Timberlake Assocs., 2024 VT 83, ¶ 1, __ Vt. __, 331 A.3d 1070 (affirming civil division's determination of necessity for taking of land by AOT for DDI Project on appeal by Timberlake); Agency of Transp. v. Timberlake Assocs., 2024 VT 14, ¶ 1, 219 Vt. 97, 315 A.3d 967 (affirming civil division order concluding that Vallee and Crystal Clear Hospitality were barred from further contesting necessity of AOT's taking or public purpose of DDI Project); Agency of Transp. v. Timberlake Assocs., 2020 VT 73, ¶ 1, 213 Vt. 106, 239 A.3d 253 (reversing civil division order denying Vallee's motion to intervene in AOT's condemnation action related to DDI Project).

## B. Permit Proceedings at Issue in this Appeal

¶ 10. In July 2018, while the DDI Project litigation discussed above was ongoing—and AOT had therefore yet to begin any related construction—Costco applied to amend condition 29 of Permit 19C to authorize operation of the gas station during limited, off-peak traffic hours prior to the completion of the MVD Improvements. In February 2020, the Commission issued Land Use Permit #4C0288-19F (Permit 19F). Permit 19F allowed Costco to operate the gas station at limited hours until it was able to satisfy condition 29 of Permit 19C and thus operate at full-time hours. Conditions 10(a) and 10(e) of Permit 19F restated conditions 29(a) and 29(e) of Permit 19C with amendments contemplating part-time operation: condition 10(a) provided that Costco would construct or fund the construction of the MVD Improvements "prior to . . . full-time operation of the gas fueling station unless the [DDI Project is] under construction"; and condition 10(e) provided that if AOT had not commenced and made substantial progress toward completion

5

of the DDI Project and Costco wished to "conduct full-time operation of the gasoline station," then Costco must "pay for the evaluation and implementation of modified signal timings along the US Route 7 corridor." Neighbors appealed to the Environmental Division and Costco cross-appealed.

¶ 11. Costco sent a letter to the Colchester zoning administrator in March 2020, requesting a determination that it did not need a site-plan amendment to operate its gas station for limited hours prior to completing the MVD Improvements. Although Costco took the position that no amendment was necessary, it also applied for an amendment to its municipal permit authorizing limited-hours operation under the same conditions approved in Permit 19F. In May 2020, the zoning administrator issued a determination indicating that no site-plan amendment was necessary and citing Costco's MOU with the town for the proposition that the traffic-mitigation measures required by Costco's Act 250 permit would satisfy the requirements of the municipal permits. Several days later, Costco began operating the gas station at limited hours.

¶ 12. Meanwhile, Costco's site-plan amendment application was pending before the DRB. In June 2020, the DRB approved the application subject to conditions mirroring, as relevant here, those included in Permit 19F. Costco appealed to the Environmental Division, and neighbors cross-appealed.

¶ 13. In 2021 and 2022, Costco commissioned a study of the signal-timing modifications along the Route 2/7 corridor contemplated by condition 10(e) of Permit 19F and condition 29(e) of Permit 19C. AOT implemented the identified changes in February 2022. Costco then commissioned a post-implementation analysis which demonstrated that the revised signal timings would mitigate the impact of additional traffic generated by both limited and full-time operation of the gas station such that the overall performance of the Route 2/7 corridor during peak-hour conditions satisfied AOT's level-of-service requirements.

¶ 14. On this basis, Costco sought a jurisdictional opinion regarding its proposal to operate the gas station at full-time hours. The Act 250 District Coordinator issued an opinion

concluding that a permit amendment was necessary for Costco to begin operating the gas station at full-time hours. Costco appealed to the Environmental Division, and neighbors cross-appealed.

¶ 15. In 2022, Costco filed a permit-amendment application with the town. The zoning administrator rejected the application, explaining that no additional permits were required for Costco to begin operating the gas station at full-time hours. Neighbors appealed this decision to the DRB, which upheld the zoning administrator's determination. They then appealed to the Environmental Division.

¶ 16. The Environmental Division coordinated the four appeals thus pending before it: one related to full-time operation under the Act 250 permit; one related to full-time operation under the municipal permit; one related to part-time operation under the Act 250 permit; and one related to part-time operation under the municipal permit.

¶ 17. Costco and Vallee filed cross-motions for summary judgment on the question of whether Costco's application to amend its Act 250 permit to operate at limited hours was barred by Act 250 Rule 34(E) and the analysis set forth in In re Stowe Club Highlands, 166 Vt. 33, 38, 687 A.2d 102, 105 (1996).[3] Costco sought a determination that its application was not barred.

---

[3] Given our conclusions below, we do not discuss the law pertaining to permit amendments in detail here. However, some background is helpful to understand the nomenclature used in referring to this issue and the related argument neighbors raised in the municipal-permit appeal. Act 250 Rule 34(E) sets forth what it describes as the "Stowe Club Highlands Analysis." Act 250 Rules, Rule 34(A), Code of Vt. Rules 12 004 060, https://act250.vermont.gov/sites/acttwofifty/ files/documents/2015%20Adopted%20Rules.pdf [https://perma.cc/9DWW-4XKD]. The rule was promulgated following our decision in Stowe Club Highlands, where we concluded that an application to modify conditions imposed by an existing Act 250 permit required the consideration of certain factors in order to "weigh[] the competing values of flexibility and finality in the permitting process" and deferred to the Board to develop more specific standards to guide such applications. 166 Vt. at 38, 687 A.2d at 105; see In re Waterfront Park Act 250 Amendment, 2016 VT 39, ¶ 11, 201 Vt. 596, 146 A.3d 334. We affirmed the environmental court's application of the Stowe Club Highlands factors to a municipal zoning permit in In re Hildebrand, 2007 VT 5, ¶ 12, 181 Vt. 568, 917 A.2d 478 (mem.). In re Application of Lathrop Ltd. P'Ship I, 2015 VT 49, ¶ 56, 199 Vt. 19, 121 A.3d 630. Therefore, while proposed amendments to Act 250 and municipal permit conditions are each assessed under a comparable test, it is generally referred to as the Stowe Club Highlands analysis in the Act 250 context and the Hildebrand analysis in the municipal-zoning context.

7

Vallee argued that Costco was precluded from seeking an amendment under the rule, and also raised additional preclusion issues under the successive-application and collateral-attack doctrines. In August 2021, the Environmental Division granted Costco's motion and denied Vallee's motion, concluding that: Rule 34(E) did not bar Costco's application for a permit amendment; the successive-application doctrine did not apply; and Costco's proposal to operate at limited hours before the MVD Improvements were complete did not represent an impermissible collateral attack on the underlying permit.

¶ 18.   Vallee also moved for summary judgment in both municipal-permit appeals, seeking, among other things, a declaration that Costco needed a permit amendment to operate its gas station before the completion of certain traffic improvements and requesting either remand of the amendment application back to the DRB because it did not undertake the Hildebrand analysis or a determination that Costco was barred or estopped from applying for an amendment.  Costco moved for summary judgment in the limited-hours municipal permit docket, arguing that it was entitled to seek an amendment under the Hildebrand analysis.   In September 2021, the Environmental Division declined to remand the matter to the DRB, concluded that Costco was not barred or estopped from seeking a permit amendment, and held that it would be premature to conduct the Hildebrand analysis prior to trial on the merits.

¶ 19.   In 2023, neighbors moved to dismiss both Act 250 appeals for failure to join AOT as a necessary co-applicant.  Generally, an Act 250 permit application must "be signed by the applicant and any co-applicant," i.e., "[t]he record owner(s) of the tract(s) of involved land."  Act 250 Rules, Rule 10(A).  Neighbors contended that AOT was a necessary co-applicant because the signal-timing modifications could only be implemented by AOT.  The court denied the motion, reasoning that the existence of conditions requiring off-site mitigation measures to be carried out on other parcels did not transform those otherwise-unrelated parcels into "involved land" within the meaning of the rule.  It further concluded that the co-applicant requirement served the dual

8

purposes of ensuring that all permit conditions are enforceable and that any party with a substantial interest in the involved lands has an opportunity to participate. It found both aims satisfied here: Costco could be subject to an enforcement action if it failed to continuously satisfy all relevant permit conditions, and AOT had an opportunity to participate in the proceedings.

¶ 20. AOT began construction of the DDI Project in February 2023.[4] Costco moved for summary judgment in all four pending appeals, arguing that the commencement of construction on the DDI Project mooted the issues because it necessarily satisfied condition 10(a) of Permit 19F and thus unequivocally allowed Costco to operate the gas station at full-time hours.

¶ 21. In November 2023, the Environmental Division held a two-day merits hearing on all remaining issues in these proceedings. It issued a final decision in April 2024. Therein, it rejected Costco's mootness argument, concluded that Costco was entitled to seek an amendment to its municipal permit under the Hildebrand analysis, and held that both limited-hours permits satisfied the applicable traffic-mitigation requirements. The trial court recognized, however, that the central dispute was whether Costco had satisfied all remaining permit conditions such that it was entitled to operate the gas station at full-time hours. The court rejected Vallee's argument that it lacked jurisdiction to consider this question and concluded that because construction of the DDI Project had commenced and the modified signal timings had been implemented, conditions 10(a) and (e) had both been satisfied such that Costco could operate the gas station full-time in compliance with the relevant Act 250 and municipal traffic standards. The Environmental Division determined that it had thereby addressed all remaining issues in the four coordinated proceedings and issued a final judgment order. Neighbors appealed, and Costco cross-appealed.

---

[4] The Environmental Division found that the DDI Project's final phase—which includes the MVD Improvements—is expected to be complete by the summer of 2026.

9

## II. Discussion

¶ 22. On appeal, neighbors argue that the Environmental Division erred in: (1) failing to render a determination on all issues raised in their statements of questions; (2) denying their motion to dismiss the two Act 250 permit proceedings; (3) concluding that Costco could seek a permit amendment under Rule 34(E); (4) holding that Costco could transition to full-time hours of operation without amending its Act 250 and municipal permits; and (5) addressing the foregoing issue, because it was beyond the court's jurisdiction. Costco contends that its fulfilment of conditions 10(a) and (e) each independently allow it to operate full-time and that, as a result, all of the contentions neighbors raise are now moot. We conclude that the Environmental Division had jurisdiction to review all issues relating to full-time operation and uphold its determination that no permit amendments were required before Costco could operate the gas station without the limited-hours restriction. As a result, neighbors' remaining arguments are moot.

### A. Full-Time Hours

#### 1. Mootness

¶ 23. The Vermont Constitution limits the authority of the courts to the determination of actual controversies between adverse litigants with legally cognizable interests in the outcome of the case. Wool v. Off. of Pro. Regul., 2020 VT 44, ¶ 6, 212 Vt. 305, 236 A.3d 1250 (quotation omitted). Because the controversy must remain live at all stages of the proceeding, "a change in the facts can render an issue or an entire case moot." In re Moriarty, 156 Vt. 160, 163, 588 A.2d 1063, 1064 (1991) (quotation omitted)). A case becomes moot—and jurisdiction is lost—"if the reviewing court can no longer grant effective relief." Id. (quotation omitted); see Paige v. State, 2017 VT 54, ¶ 7, 205 Vt. 287, 171 A.3d 1011.

¶ 24. Costco suggests that neighbors' challenges to the ruling that Costco need not seek amendments to its municipal and Act 250 permits before operating the gas station at full-time hours are mooted by the commencement of construction on the DDI Project. We disagree. As the

10

Environmental Division recognized, the Act 250 District Coordinator and the town reached differing conclusions on this point, giving rise to a live controversy. Were we to accept neighbors' argument and hold that permit amendments were required, we could grant effective relief by reversing the lower court's decision and requiring Costco to seek those amendments. See Moriarty, 156 Vt. 160 at 163, 588 A.2d at 1064. As a result, neighbors still have a legally cognizable interest in the outcome of this issue, it is not moot, and this Court has jurisdiction to consider it.

2. Environmental Court Jurisdiction

¶ 25.    Next, we consider neighbors' argument that the Environmental Division erred in concluding that it had jurisdiction to consider whether Costco could operate the gas station at full-time hours. We review the court's jurisdictional determination without deference. In re Atwood Planned Unit Dev., 2017 VT 16, ¶ 15, 204 Vt. 301, 167 A.3d 312.

¶ 26.    The Environmental Division is "a court of limited jurisdiction." In re DJK, LLC WW & WS Permit, 2024 VT 34, ¶ 25, __ Vt. __, 323 A.3d 911 ("Its subject-matter jurisdiction is limited to areas authorized by 4 V.S.A. § 34."). In Act 250 and municipal permit appeals, the scope of the court's authority is coextensive with that of the district commission or municipal zoning board below, but no broader. See Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 104; In re Torres, 154 Vt. 233, 235, 575 A.2d 193, 195 (1990). We have therefore recognized that although the environmental court's review is de novo, it cannot consider issues not properly raised before the tribunal below. Lathrop Ltd. P'Ship I, 2015 VT 49, ¶ 104; see Torres, 154 Vt. at 236, 575 A.2d at 195. Where a revised proposal presents issues to the environmental court which have not been addressed below and on which potential interested persons have had no occasion to speak, we therefore require that the court remand such proposals to the municipal board or district commission for consideration in the first instance. In re Wright & Boester Conditional Use Application, 2021 VT 80, ¶ 29, 215 Vt. 593, 267 A.3d 659; see Lathrop Ltd. P'Ship I, 2015 VT

11

49, ¶ 109. The Environmental Division's review is further constrained to the matters raised in the statement of questions required under Vermont Rule of Environmental Court Procedure 5(f), which " 'functions like a pleading to limit the issues that are to be heard on the appeal.' " Atwood Planned Unit Dev., 2017 VT 16, ¶ 12 (quoting Reporter's Notes, V.R.E.C.P. 5(f)).

¶ 27. First, neighbors argue that the Environmental Division effectively revised Costco's pending permit applications to include a request to operate at full-time hours and, as a result, erroneously considered issues not presented to the tribunals below. This contention, however, is at odds with the plain language of the permits at issue, which demonstrates that the DRB and the Commission considered this question.

¶ 28. We construe permit conditions under the familiar rules of statutory construction. In re Champlain Parkway Wetland Conditional Use Determination, 2018 VT 123, ¶ 15, 209 Vt. 105, 202 A.3d 953; Agency of Nat. Res. v. Weston, 2003 VT 58, ¶ 16, 175 Vt. 573, 830 A.2d 92 (mem.). Accordingly, we look first to the plain meaning of the language used in the conditions, presuming that it expresses the drafters' intent. Champlain Parkway, 2018 VT 123, ¶ 15. So long as the language is unambiguous, we accept the plain meaning of the conditions without resorting to other tools of construction. Id.

¶ 29. Here, the plain meaning of the permit conditions was unambiguous. The first two Act 250 and municipal permits provided that Costco could operate the gas station at full-time hours if: (1) the DDI Project was under construction; (2) Costco constructed or funded the MVD Improvements; or (3) Costco paid for the evaluation and implementation of modified signal timings along the U.S. Route 2/7 corridor. The amended permits incorporated the same requirements with respect to full-time operation while authorizing interim operation of the gas station at limited hours. Thus, it is apparent that both the DRB and the Commission considered— and interested parties had an opportunity to weigh in on—what was necessary for Costco to begin

12

operating at full-time hours under each of these possible factual scenarios. No remand was required.

¶ 30. Neighbors argue that the question of whether the commencement of construction on the DDI Project allowed Costco to move to full-time operations was not raised in any statement of questions filed with respect to any of the four proceedings before the court and, as a result, it exceeded its jurisdiction in considering this issue. This was so, however, because at the time the statements were filed, construction had yet to commence. As relevant here, the questions raised by the parties therefore focused on the impact of Costco's implementation of the signal-timing modifications on its ability to operate at full-time hours. But this did not mean that, after construction of the DDI Project had begun, the environmental court was required to ignore that pivotal factual development in analyzing the permit conditions. As Costco points out, the plain language of the permit required that either condition 10(a) or condition 10(e) be satisfied—but not both. We have recognized that the environmental court can "consider the matters intrinsic to a statement of questions, even though the issue was not literally stated in the statement of questions." Atwood Planned Unit Dev., 2017 VT 16, ¶ 17; see, e.g., In re Jolley Assocs., 2006 VT 132, ¶ 9, 181 Vt. 190, 915 A.2d 282 ("The literal phrasing of the question cannot practically be considered in isolation from the zoning administrator's action that prompted the appeal."). The Environmental Division appropriately recognized that the issue of whether Costco had satisfied the conditions necessary to transition to full-time operation was central to the determination of the other questions presented on appeal. It did not err in taking up this intrinsic issue.

### 3. Statement of Questions

¶ 31. Next, neighbors argue that the environmental court failed to address several issues raised in their statement of questions and subsequently litigated, including, as relevant here, whether Costco's transition to full-time hours was a "material change" under the Act 250 Rules

13

such that a permit amendment was required.[5] The court may "clarify or dismiss some or all of the questions" raised in a statement of questions, V.R.E.C.P. 5(f), but once the matter proceeds to trial, the appellant is "entitled to have the court resolve all of the issues raised and litigated." Atwood Planned Unit Dev., 2017 VT 16, ¶ 19.

¶ 32. As the Environmental Division acknowledged, however, its determination that Costco could operate the gas station at full-time hours inherently addressed and resolved whether a permit amendment was required: the court concluded that it was not. As a result, it did not impermissibly "le[ave] open" any issues presented in the statement of questions and litigated before it. Id. ¶ 17.

¶ 33. To the extent neighbors contend that the Environmental Division nonetheless erred in not "directly address[ing]" this issue, this argument is without merit. Though the environmental court is obligated to resolve all of the issues raised and litigated by the parties, we have never required that it do so in any particular fashion. See, e.g., Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 60 n.16 (noting that while Environmental Division did not expressly rule on applicability of permit amendment requirements "[o]ur discussion reflects the necessarily implied ruling of the court"). Nor do appellants offer any reason why we should require the court to frame its conclusion in some particular manner. Cf. In re Katzenbach A250 Permit #7R1374-1, 2022 VT 42, ¶ 11, 217 Vt. 155, 287 A.3d 36 ("Although reviewed de novo, the Environmental Division's legal conclusions will be upheld if they are reasonably supported by the findings." (quotation omitted)). It remains, then, to consider whether this conclusion was error.

---

[5] Neighbors also argue that the Environmental Division failed to address several issues raised in Vallee's statement of questions in the Act 250 and municipal limited-hours dockets. We do not consider these contentions here because, as set forth below, we conclude that all issues raised in connection with the limited-hours dockets are now moot. Infra, ¶ 43.

4. Amendments to Act 250 and Municipal Permits not Required

¶ 34. Neighbors contend that Costco's transition to full-time operations was a "material change" and, as a result, Costco was required to seek amendments to its Act 250 and zoning permits. They focus their argument on the Act 250 requirements and then briefly assert that an amendment to the municipal permit was required on the same basis. For the reasons set forth below, we do not agree that Costco was required to seek an amendment to its Act 250 permit before opening the gas station full-time. Because neighbors' municipal-permit argument is identical, we reject it on the same grounds and without engaging in further analysis.

¶ 35. Under Act 250 Rule 34(A), a permittee seeking to make "any material change to a permitted development" must first apply for and be granted a permit amendment. Act 250 Rules, Rule 34(A). As relevant here, the rules define "material change" as "any cognizable change to a development . . . subject to a permit under Act 250" that "has a significant impact on any finding, conclusion, term or condition of the project's permit or which may result in a significant adverse impact with respect to" one or more of the Act 250 criteria. Act 250 Rule 2(C)(6). A change is "cognizable" if it is either "a physical alteration or a change in use." In re Request for Jurisdictional Op. re Changes in Physical Structures & Use at Burlington Int'l Airport for F-35A, 2015 VT 41, ¶ 25, 198 Vt. 510, 117 A.3d 457. The existence of such an alteration or change is determined by "analyz[ing] whether the activity was contemplated as part of the initially approved project." Id.

¶ 36. As discussed above, full-time operation of the gas station was unequivocally "contemplated as part of the initially approved project." Id. Neighbors do not dispute that this is the plain meaning of the Act 250 permit. They argue, however, that reading the permit in this way creates an invalid condition subsequent. We disagree.

¶ 37. Act 250 "permits are frequently issued with conditions and requirements mitigating the impact of particular development." In re N. E. Materials Grp. LLC Act 250 JO # 5-21, 2015 VT 79, ¶ 27, 199 Vt. 577, 127 A.3d 926. In In re Treetop Development Co. Act 250 Development,

15

we held that a condition reserving the a district commission's right to continually review the applicant's mitigation measures and impose additional conditions as needed was an invalid condition subsequent. 2016 VT 20, ¶¶ 6, 14, 201 Vt. 532, 143 A.3d 1086. This was so, we explained, because the condition both expropriated the Natural Resources Board's enforcement authority and impeded the goal of finality integral to the land-use permitting process. Id. ¶ 14. At the same time, however, we affirmed that "[i]n order to ensure continued compliance with the [Act 250] criteria, the Commission is entitled to grant conditional approval by imposing reasonable conditions on a project." Id. ¶ 12. We distinguished such reasonable conditions from invalid conditions subsequent, explaining that "[p]ermissible conditions include those with prospective application that are intended to alleviate adverse impacts that either are or would otherwise be caused or created by a project . . . such as those requiring permittees to take specific action when triggered by certain events" or "incorporating a schedule of actions necessary for continued compliance with Act 250 criteria." Id. We offered several examples of permissible conditions, including one "establishing hours of operation." Id. This Court drew the same distinction in In re Hinesburg Hannaford Act 250 Permit, explaining that where there is "sufficient evidence that particular permit conditions will likely satisfy" the Act 250 criteria, "Treetop does not preclude a condition requiring a permit applicant to perform a post-development study of traffic conditions to assure that specific, evidence-based performance standards are met." 2017 VT 106, ¶ 84, 206 Vt. 118, 179 A.3d 727.

¶ 38. The conditions at issue here are not invalid conditions subsequent. They are not "open-ended" conditions undermining the goal of finality. Hinesburg Hannaford, 2017 VT 106, ¶ 82. They do not purport to vest the District Commission with authority to "continuously amend the permit as necessary to redress future Act 250 violations," thus expropriating another agency's enforcement authority. Treetop, 2016 VT 20, ¶ 14. Instead, they are precisely the type of

16

reasonable, evidence-based conditions with prospective application we recognized as permissible in Treetop and Hinesburg Hannaford.

¶ 39.   Neighbors also suggest the conditions are unenforceable because they allegedly contravene representations made by Costco, earlier in the proceedings, that the gas station would not be opened full-time prior to completion of the MVD Improvements.   In the context of municipal permits, we have explained that conditions "must be expressed with sufficient clarity to give notice of the limitations on the use of the land, and cannot incorporate by reference statements made by an applicant at a hearing."   In re Farrell & Desautels, Inc., 135 Vt. 614, 617, 383 A.2d 619, 621 (1978).   As a result, while a permit may approve a project pursuant to the plans and related exhibits admitted into evidence, "[c]onditions that are not stated on the permit may not be imposed on the permittee."   In re Kostenblatt, 161 Vt. 292, 299, 640 A.2d 39, 44 (1994).

¶ 40.   Neighbors argue that these principles do not foreclose their argument because the Act 250 permits mandated that Costco's project be completed, operated, and maintained in accordance with the permit conditions and "the permit application, plans, and exhibits on file with the Commission and other material representations."   (Emphasis added.)   They do not explain, however, how an earlier representation at odds with the unambiguous permit conditions ultimately imposed could be in any sense "material."   See, e.g. Farrell & Desautels, 135 Vt. at 616, 383 A.2d at 621 (observing that "[w]hatever the discussion at the original hearing, or the internal considerations which prompted board members to grant the requested permit, no condition respecting future use of the premises found its way into the findings as filed or the order as issued," and rejecting "proposition that a formal written order which contains some express terms and conditions can also be said to carry with it silent and unexpressed terms and conditions" (emphases omitted)).   As a result, we find this argument without merit.

¶ 41.   As noted above, neighbors briefly argue that the same analysis they propound with respect to the Act 250 permit compels the same conclusion with respect to the municipal permit.

17

Insofar as neighbors fail to raise a meaningfully distinct analysis on this point and we have rejected their Act 250 argument, we reach the same conclusion regarding the municipal permit.

## B. Remaining Issues

¶ 42.    Neighbors also argue that the Environmental Division erred in: (1) not addressing several issues raised in Vallee's statement of questions in the two limited-hours dockets; (2) denying their motion to dismiss both Act 250 dockets for failure to join AOT as a necessary co-applicant; and (3) concluding that Costco had satisfied Act 250 Rule 34(E) with respect to the limited-hours amendments.

¶ 43.    Our conclusions above lead us to determine that each of these issues are moot.  See Moriarty, 156 Vt. at 163, 588 A.2d at 1064 (recognizing that because "[a] controversy must remain alive throughout the course of appellate review . . . a change in the facts can render an issue or entire case moot").  Because Costco may now operate the gas station at full-time hours, the issues raised in connection with the limited-hours permits are no longer live.  Similarly, the commencement of construction on the DDI Project means that Costco is able to operate at full-time hours with regard to the signal-timing condition, so the question of whether AOT was a necessary co-applicant with respect to the Act 250 permits does not present a real controversy.

Affirmed.

FOR THE COURT:

_____

Associate Justice

18